IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **WINGSPAN PORTFOLIO** | § | **Case No. 15-41669** |
| **HOLDINGS, INC.,** | § | |
| | § | **(Chapter 7)** |
| Debtor. | § | |
| | § | |
| | § | |
| **MICHELLE H. CHOW, TRUSTEE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **ADV. NO. 17-04100** |
| | § | |
| **VIKASH JAIN,** | § | |
| | § | |
| Defendant. | § | |

---

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

---

Plaintiff Michelle H. Chow, Trustee for the bankruptcy estate of Wingspan Portfolio Holdings, Inc., files this Motion for Summary Judgment and Brief in Support of her claims against Defendant Vikash Jain.

## I. INTRODUCTION

1.    This is a breach of note case.  The Trustee seeks to recover the sum of $159,253.92, plus accrued interest through the date of judgment, plus attorney's fees and costs owed by Defendant.  Defendant has refused to pay the Note.  The Trustee also seeks summary judgment on each of Defendant's affirmative defenses.  There are no disputed issues of fact, and the Trustee is entitled to judgment as a matter of law.

## II. STATEMENT OF THE ISSUES

2.      The Trustee is entitled to recover for breach of a note and recover damages and attorney's fees.

3.      Defendant has no evidence of any of his affirmative defenses such that the Trustee is entitled to judgment as a matter of law on Defendant's affirmative defenses.

## III. STATEMENT OF FACTS

4.      On December 2, 2015, an Agreed Order for Relief under Chapter 7 of title 11 of the United States Code ("Bankruptcy Code") was entered against Wingspan Portfolio Holdings, Inc. ("Debtor").[1]  Michelle H. Chow is the duly appointed Chapter 7 Trustee of the Debtor.

5.      Vikash Jain ("Jain" or "Defendant") was employed by Wingspan Portfolio Advisors, LLC ("WPA"), an affiliate of Debtor, as the Vice President of Strategic Alliances from 2012 through October of 2014.[2]  Jain was also on the board of Directors of the Debtor.[3]  Jain primarily uses the email address of vikjain@aol.com.[4]

6.      On October 25, 2012, Defendant signed a Secured Promissory Note in the original principal sum of $201,725.59 payable to Debtor October 25, 2012 (the "Note").[5]  Under the terms of the Note, Jain promised to pay to the order of Debtor the principal amount of $201,725.59 on or before the earlier of: (1) December 31, 2015; or (2) the occurrence of a Triggering Event as defined within the Note.[6]  Jain's failure to be employed by WPA or its affiliates constitutes a Triggering Event under the Note.[7]  Defendant's indebtedness under the Note accrued interest at

---

[1] Bankr. Case No. 15-41669, Dkt. 12.
[2] App. 29-30 (Jain Depo. p. 20, l. 13 – p. 21, l. 1).
[3] App. 28-29 (Jain Depo. p. 19, l. 24 – p. 20, l. 1).
[4] App. 27 (Jain Depo. p. 17, l. 3-4).
[5] App. 30 (Jain Depo. p. 21, l. 7-19); App. 1-2 (Exhibit 1).
[6] App. 1-2 (Exhibit 1); App. 32-34 (Jain Depo. p. 23, l. 5 – p. 25, l. 1).
[7] *Id.*

the rate of two percent (2%) per annum.[8]  Additionally, any portion of the Note that was not paid when due would bear interest at the rate of ten percent (10%) per annum.[9]  Jain understands that the Trustee is the owner and holder of the Note.[10]

7.       Jain signed the Note promising to pay Debtor because Debtor paid the taxes that Jain owed for a grant of restricted stock; Jain knew he was repaying the Debtor for taxes paid on his behalf.[11]  Jain was the only employee granted restricted stock.[12]

8.       Debtor applied a credit to Defendant against the Note in the sum of $4,971.67 on December 31, 2012, and another credit in the sum of $37,500.00 on January 31, 2013.[13]  Jain did not make any other payment under the Note, and those two credits are the only credits that Jain is entitled to under the Note.[14]  Jain admits that he was in default under the Note on January 2, 2014 because he failed to make the interest payment due on January 1, 2014.[15]  On January 2, 2014, Jain was in breach of the Note, and interest accrued from January 2, 2014 at the rate of 10% per annum.[16]

9.       On October 21, 2014, Jain signed an Agreement with Debtor under which Jain's employment terminated (the "Termination Agreement").[17]  Under the Termination Agreement, Jain agreed that Debtor was <u>not</u> releasing any claims related to the Note.[18]  Jain understood that Debtor was not releasing any claims related to the Note.[19]  A Triggering Event occurred when Jain

---

[8] App. 1-2 (Exhibit 1); App. 34 (Jain Depo. p. 25, l. 2-6).
[9] App. 1-2 (Exhibit 1); App. 34 (Jain Depo. p. 25, l. 7-11).
[10] App. 28 (Jain Depo. p. 19, l. 7-15).
[11] App. 31 (Jain Depo. p. 22, l. 16-22); App. 1-2 and 15-24 (Exhibits 1 and 10).
[12] App. 15-24 (Exhibit 10); App. 42 (Jain Depo. p. 81, l. 6-19).
[13] App. 35-36 (Jain Depo. p. 26, l. 14 – p. 27, l. 13).
[14] App. 35, 36 (Jain Depo. p. 26, l. 14-17; p. 27, l. 11-13).
[15] App. 36 (Jain Depo. p. 27, l. 14-18).
[16] App. 3-10 (Exhibit 3); App. 36 (Jain Depo. p. 27, l. 14-18).
[17] App. 37 (Jain Depo. p. 30, l. 13-19); App. 3-10 (Exhibit 3).
[18] App. 3-10 (Exhibit 3).
[19] App. 38 (Jain Depo. p. 45, l. 12-24).

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT – PAGE 3**

failed to be employed by WPA or its affiliates on October 21, 2014.[20]  As such, the principal amount, together with interest thereon from the date of execution until paid was due in full.[21]  Jain admits that the Note was due and payable in full on October 21, 2014, and he admits that he failed to pay the Note in full on that date.[22]  On October 21, 2014, the outstanding balance due under the Note was $159,253.92 in principal plus accrued interest in the sum of $15,704.79.[23]

10.     Plaintiff made demand upon Jain on June 9, 2017.[24]  Despite demand, Jain failed and refused, and continues to fail and refuse, to honor his obligations.

11.     Through the date of the filing of this motion, Jain's indebtedness under the Note includes $159,253.92 in principal, plus accrued interest through April 20, 2018 in the sum of $71,507.56, and accrued interest at a rate of $43.63 from April 21, 2018 through the date of judgment.[25]  Through summary judgment, the Trustee's incurred attorneys' fees are $24,949.50, and incurred costs of $566.00.[26]

## IV. ARGUMENT AND AUTHORITY

### A.     Defendant breached the Note.

12.     In order to recover on a promissory note, a "plaintiff must prove: (1) the note in question; (2) the party sued signed the note; (3) the plaintiff is the owner or holder of the note[;] and (4) a certain balance is due and owing on the note."[27]  A "holder" is "the person in possession

---

[20] App. 3-10 (Exhibit 3); App. 33 (Jain Depo. p. 24, l. 7-12; l. 21-23).
[21] App. 36 (Jain Depo. p. 27, l. 19-22).
[22] App. 37 (Jain Depo. p. 30, l. 7-24).
[23] App. 71 (Affidavit of Michelle Chow, ¶ 4-5).
[24] App. 11-14 (Exhibit 7); App. 40-41 (Jain Depo. p. 73, l. 19 – p. 74, l. 2).
[25] App. 71 (Affidavit of Michelle Chow, ¶ 6).
[26] App. 46, 48 (Affidavit of Todd Hoodenpyle, ¶¶ 4, 15).
[27] *PlainsCapital Bank v. Rogers*, No. 16-41654, 2017 WL 4838393, at *3 (5th Cir. Oct. 25, 2017), *citing Geiselman v. Cramer Fin. Grp.*, 965 S.W.2d 532, 536 (Tex. App.—Houston [14th Dist.] 1997, no writ) (citing *Bean v. Bluebonnet Savs. Bank FSB*, 884 S.W.2d 520, 522 (Tex. App.—Dallas 1994, no writ))

of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession."[28]

13.     Jain admits that the Trustee is the owner and holder of the Note.  Jain has defaulted under the terms of the Note by his failure to pay his indebtedness under the Note in full.  Jain admits that he has failed to pay the amounts due under the Note.  As of October 21, 2014, the principal balance totaled to $159,253.92, and accrued interest totaled to $15,704.79.  Pursuant to the Note, the indebtedness continues to accrue interest at the rate of ten percent (10%) per annum, or $43.63 per diem.  The Trustee is entitled to judgment against Jain for breach of contract and damages in the sum of $159,253.92, accrued interest through the date of the filing of this motion in the sum of $71,507.56, and accrued interest at a rate of $43.63 from April 20, 2018 through the date of judgment, plus attorney's fees and costs.

**B.      The Trustee is entitled to attorney's fees and costs under the Note.**

14.     The Note provides that Defendant agrees to pay "all costs and expenses of collection, including but not limited to reasonable attorney's fees."

15.     The Fifth Circuit uses the "lodestar" method to calculate attorney's fees.[29]  "A lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work."[30]  Once the "lodestar" figure is determined, the Court may decrease or enhance the lodestar based on the *Johnson* factors.[31]  In *Johnson*, the court set forth twelve factors to be taken into consideration when making an attorney fee calculation, including:

          a.      the time and labor required;
          b.      the novelty and difficulty of the issues;

---

[28] *Id.*, *citing* Tex. Bus. & Com. Code § 1.201(b)(21)(A).
[29] *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999).
[30] *Id.*
[31] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT – PAGE 5**

c.      the skill required to perform the legal services;
d.      the preclusions of other employment by the attorney;
e.      the customary fee;
f.      whether the fee is fixed or contingent;
g.      the time limitations imposed by the client or circumstances;
h.      the amount involved and results obtained;
i.      the experience, reputation, and ability of the attorneys'
j.      the undesirability of the case;
k.      the nature and length of the professional relationship with the client; and
l.      the award in similar cases;

These twelve factors should be considered within the framework outlined in *Cooper Liquor, Inc.*[32]

16.      The Trustee is entitled to attorney's fees from Jain under the Note. The Note provides that the Trustee is entitled to an award of attorney's fees incurred in collection and enforcement of the notes.[33] The Trustee requests that the Court award attorney's fees against Defendant in the amount of $24,949.50, plus cots of $566.00 for the services of Singer & Levick, P.C. related to collection of the Note. This amount includes fees and expenses incurred through summary judgment. The Trustee relies upon the Declaration of Todd Hoodenpyle which is incorporated by reference herein.[34]

17.      Trustee requests the right to seek additional fees in the event that Defendant appeals this Court's decision to the Fifth Circuit.

## C.     Defendants' "unclean hands" defense.

18.      In his Answer, Defendant alleges an affirmative defense of "unclean hands."[35] The defendant can assert that specific performance should not be awarded because the plaintiff has "unclean hands." Under the doctrine of unclean hands, a court may refuse to grant equitable relief to a plaintiff who has been guilty of unlawful or inequitable conduct regarding the issue in

---

[32] *Hafferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 272, n. 14 (5th Cir. 1987).
[33] App. 2 (Exhibit 1, p. 2).
[34] App. 45-69.
[35] Dkt. 4, p. 2.

dispute.[36]  The party claiming unclean hands has the burden to show that it was injured by the other party's unlawful or inequitable conduct.[37]

19.     In this case, the Trustee does not seek equitable relief by the breach of note claim; the Trustee seeks a legal remedy, damages for the principal and interest owed under the Note. Regardless, there is no evidence that Jain was injured by any party's unlawful or inequitable conduct.  Accordingly, Defendant's affirmative defense of unclean hands fails as a matter of law.

## D.     Defendants' defense of estoppel and quasi-estoppel.

20.     In his Answer, Defendant alleges an affirmative defense of estoppel and quasi-estoppel.  Defendant failed to state which theory of estoppel he asserts.[38]  Defendant failed to testify to any facts that would support a claim for estoppel or quasi-estoppel.[39]

21.     Estoppel based in law prevents a party from taking positions contrary to those it took in judicial and legislative records, property deeds, and contract.  Estoppel by record (or "judicial estoppel") prevents a party from asserting a position contrary to that taken under oath in an earlier judicial proceeding to gain an unfair advantage.[40]  There is no evidence that the Trustee asserts a position contrary to that taken under oath in an earlier position to gain an unfair advantage. Estoppel by deed prevents a party from denying the truth of matters set forth in a deed the party has offered as grantor or has accepted as grantee.[41]  This case does not involve the truth of matters set forth in a deed.  Estoppel by contract prevents a party from denying the terms of a valid or fully executed contract unless the contract is set aside by fraud, accident or mistake.[42]  There is no evidence that the Note should be set aside for fraud, accident or mistake, and Jain has not alleged

---

[36] *Paciwest, Inc. v. Warner Alan Props.*, LLC, 266 S.W.3d 559, 571, (Tex.App.—Fort Worth 2008, pet. denied).
[37] *Id.*
[38] Dkt. 4, p. 2.
[39] App. 39 (Jain Depo. P. 65, l. 7-11.)
[40] *Ferguson v. Building Materials Corp.*, 295 S.W.3d 642, 643 (Tex.2009).
[41] *Greene v. White*, 153 S.W.2d 575, 583 (Tex.1941).
[42] *Matthews v. Sun Oil Co.*, 411 S.W.2d 561, 564 (Tex.App.—Amarillo 1996), *aff'd*, 425 S.W.2d 330 (Tex.1968).

any such defenses.  To the extent that he alleges an affirmative defense of estoppel by record, deed or contract, Jain's affirmative defense fails as a matter of law.

22.     The elements of equitable estoppel are (1) a false representation or concealment of material facts, (2) made with knowledge, actual or constructive, of those facts, (3) with the intention that it should be acted on, (4) to a party without knowledge or means of obtaining knowledge of the facts, (5) who detrimentally relies on the representations.[43]  There is no evidence of any a false representation or concealment of material facts; that any representation or concealment of material facts was made with knowledge, actual or constructive, of those facts; that any false representation or concealment of material facts were made with the intention that it should be acted on; that any false representation or concealment of material fact was made to a party without knowledge or means of obtaining knowledge of the facts; or that Jain detrimentally relied on false representation or concealment of material fact.   Accordingly, Defendant's affirmative defense of equitable estoppel fails as a matter of law.

23.     Quasi-estoppel is an equitable doctrine that prevents a party from asserting, to another's disadvantage, a right inconsistent with a position the party previously took.[44]  The elements of the defense of quasi-estoppel are: (1) the plaintiff acquiesced to or accepted a benefit under a transaction; (2) the plaintiff's present position is inconsistent with its earlier position when it acquiesced to or accepted the benefit of the transaction; and (3) it would be unconscionable to allow the plaintiff to maintain its present position, which is to another's disadvantage.[45]  There is no evidence that Debtor or the Trustee acquiesced to or accepted a benefit under a transaction, that Debtor or the Trustee's present position is inconsistent with an earlier position, or that allowing

---

[43] *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515-16 (Tex.1998).
[44] *Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex.2000).
[45] *Id.*

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT – PAGE 8**

Debtor or the Trustee to maintain its present position would be to Jain's disadvantage.  Defendant's quasi-estoppel defense is inapplicable and fails as a matter of law.

**E.      Defendant's defense of election of remedies.**

24.      In his Answer, Defendant alleges an affirmative defense of election of remedies.[46] The election-of-remedies defense bars relief when (1) a party successfully exercises an informed choice (2) between two or more remedies, rights, or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice.[47]

25.      There is no evidence that the Trustee successfully exercised an informed choice between two or more remedies, rights or states of fact which were so inconsistent as to constitute manifest injustice.  Accordingly, Defendant's affirmative defense of election of remedies fails as a matter of law.

**F.      Defendants' defense of ratification.**

26.      In his Answer, Defendant alleges an affirmative defense of ratification.[48]  The elements of ratification as: (1) approval by act, word, or conduct; (2) with full knowledge of the facts of the earlier act; and (3) with the intention of giving validity to the earlier act.[49]  Because ratification is an affirmative defense, the party raising the issue bears the burden to offer proof on each element of the defense.[50]

27.      There is no evidence that the Trustee had knowledge of facts of an earlier act of the Debtor for which the Trustee approved of such earlier act by the Trustee's act, word or conduct

---

[46] Dkt. 4, p. 2.
[47] *Horizon Offshore Contractors, Inc. v. Aon Risk Servs. of Texas, Inc.*, 283 S.W.3d 53, 59 (Tex.App.—Houston [14th Dist.] 2009, pet. denied), *citing Bocanegra v. Aetna Life Ins. Co.,* 605 S.W.2d 848, 850 (Tex.1980).
[48] Dkt. 4, p. 2.
[49] *Rogers v. Propst*, No. 01-14-00114-CV, 2015 WL 1245880, at *4 (Tex. App. Mar. 17, 2015), *citing Motel Enters., Inc. v. Nobani,* 784 S.W.2d 545, 547 (Tex.App.—Houston [1st Dist.] 1990, no pet.)
[50] *Id.*

with full knowledge of the facts of the earlier act.  Accordingly, Defendant's affirmative defense of ratification fails as a matter of law.

## G.      Defendants' defense of waiver.

28.      In his Answer, Defendant alleges an affirmative defense of waiver.  Waiver is an intentional relinquishment of a known right and is either made expressly or indicated by conduct that is inconsistent with an intent to claim the right.[51]

29.      There is no evidence that the Trustee, or the Debtor, intentionally relinquished any known right either expressly or by conduct that was inconsistent with an intent to claim any rights. Accordingly, Defendant's affirmative defense of waiver fails as a matter of law.

## H.      Defendants' defense of failure to mitigate damages.

30.      In his Answer, Defendant alleges an affirmative defense of failure to mitigate damages.[52]  Under the doctrine of mitigation, the plaintiff has a duty to exercise reasonable care in minimizing its damages.[53]  The defendant has the burden to sow that the plaintiff did not use ordinary care in reducing or avoiding its damages.[54]

31.      There is no evidence that the Trustee, or the Debtor, did not use ordinary care in reducing or avoiding its damages.  To the contrary, the Trustee made demand on Jain, and he refused to honor his obligations and pay the Note.  Accordingly, Defendant's affirmative defense of failure to mitigate damages fails as a matter of law.

---

[51] *Shields L.P. v. Bradberry,* 526 S.W.3d 474, 485 (Tex.2017).
[52] Dkt. 4, p. 2.
[53] *Great Am. Ins. v. North Austin MUD,* 908 S.W.2d 415, 426 (Tex.1995).
[54] *Alamo Cmty. Coll. Dist. v. Miller*, 274 S.W.3d 779, 788 (Tex.App.—San Antonio 2008, no pet.).

**I.      Defendants' defense of accord and satisfaction.**

32.      In his Answer, Defendant alleges an affirmative defense of accord and satisfaction.[55]  The affirmative defense of accord and satisfaction rests on a new contract, express or implied, in which the parties agree to discharge the existing obligation for a lesser payment.[56]

33.      There is no evidence of a new contract, express or implied, in which the parties agreed to discharge Jain's obligations under the  Note.  To the contrary, the Termination Agreement specifically provides that Debtor was not releasing any claims related to the Note. Accordingly, Defendant's affirmative defense of accord and satisfaction fails as a matter of law.

**J.      Defendants' defense of novation.**

34.      In his Answer, Defendant alleges an affirmative defense of novation.[57]  A novation is a substitution that either (1) replaces an existing obligation with a new obligation or (2) replaces an original party with a new party.[58]  To establish the defense of novation, the defendant must prove that there was: (1) an earlier valid contract, (2) a mutual agreement of the parties to a new agreement, (3) extinguishment of the earlier contract, and (4) a new valid contract.[59]

35.      There is no evidence that Defendant and Trustee (or the Debtor) entered into a new agreement that extinguished the Note.  Accordingly, Defendant's affirmative defense of novation fails as a matter of law.

---

[55] Dkt. 4, p. 2.

[56] *Williams v. Colthurst*, 253 S.W.3d 353, 359 (Tex.App.—Eastland 2008, no pet.); *Hairston v. SMU*, 441 S.W.3d 327, 336 (Tex.App.—Dallas 2013, no pet.).

[57] Dkt. 4, p. 3.

[58] *New York Party Shuttle, LLC v. Bilello*, 414 S.W.3d 206, 214 (Tex.App.—Houston [1st Dist.] 2013, pet. Denied).

[59] *In re B.N.L.-B.*, 523 S.W.3d 254, 264 (Tex.App.—Dallas 2017, no pet.); *New York Party Shuttle*, 414 S.W.3d at 214.

## **V. CONCLUSION**

Defendant Vikash Jain admittedly failed to pay the Note when due.  The Trustee is entitled to damages in the sum of $159,253.92 in principal, plus accrued interest through April 20, 2018 in the sum of $71,507.56, accrued interest at a rate of $43.63 from April 21, 2018 through the date of judgment, plus attorneys' fees in the sum of $24,949.50, and incurred costs of $566.00.  Accordingly, the Trustee respectfully requests that the Court grant her Motion for Summary Judgment.

Respectfully submitted,

SINGER & LEVICK, P.C.

By:      /s/ Todd A. Hoodenpyle
         Michelle E. Shriro
         State Bar No. 18310900
         mshriro@singerlevick.com
         Todd A. Hoodenpyle
         State Bar No. 00798265
         hoodenpyle@singerlevick.com

16200 Addison Road, Suite 140
Addison, Texas 75001
Phone: 972.380.5533
Fax:    972.380.5748

ATTORNEYS FOR MICHELLE H. CHOW, TRUSTEE

## CERTIFICATE OF SERVICE

I hereby certify that Notice of this document will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District and that a true and correct copy has been served upon the parties listed below as indicated on this 26th day of April 2018:

**Via E-Mail: cbarnwell@barnwelllawgroup.com**

Patrick Cory Barnwell
Barnwell Law Group, P.C.
2425 Commerce Avenue NW, Suite, 300
Duluth, Georgia 30096

       /s/Todd A. Hoodenpyle
       Todd A. Hoodenpyle

# SECURED PROMISSORY NOTE

**$201,725.59**

Carrolton, Texas
October 25, 2012

FOR VALUE RECEIVED, on or before earlier of (i) December 31, 2015 and (ii) the occurrence of a Triggering Event (as defined herein) ("Maturity Date"), VIK JAIN ("Borrower") promises to pay to the order of WINGSPAN PORTFOLIO HOLDINGS, INC., a Delaware corporation ("Payee") at its offices at 4100 Midway Road, Suite 1110, Carrolton, Texas 75007, the principal amount of TWO HUNDRED ONE THOUSAND SEVEN HUNDRED TWENTY FIVE AND 59/100 DOLLARS ($201,725.59), together with interest thereon from the date hereof until paid at a fixed rate per annum equal to two percent (2%), calculated on the basis of actual days elapsed in a year of 365 or 366 days, as applicable. Any portion of this Secured Promissory Note ("Note") that is not paid when due shall bear interest at the rate of ten percent (10%) per annum. As used herein, the term "Triggering Event" shall mean either (i) the failure of Borrower to be employed by Wingspan Portfolio Advisors, LLC ("WPA") or its affiliates (for any reason or without reason) or (ii) the occurrence of any transaction or series of related transactions following which any person or entity (or group of persons or entities acting together), other than Steven Horne, owns or controls a majority of the economic or voting interests of Payee.

The principal of and all accrued but unpaid interest on this Note shall be due and payable as follows:

(a)     interest shall be due and payable annually as it accrues, commencing on the first day of January, 2013 and continuing on the first day of each successive year thereafter during the term of this Note; and

(b)     the outstanding principal balance of this Note, together with all accrued but unpaid interest, shall be due and payable on the Maturity Date;

*provided that* Borrower shall be required to prepay this Note upon Borrower's receipt of (or entitlement to receive) (i) any bonus compensation from Payee or WPA, (ii) any from Payee with respect to Borrower's stock ownership of Payee ("Stock"), or (iii) any proceeds from the sale or disposition of Stock, in each case, such prepayment amount to be equal to (A) fifty percent (50%) of the gross amount of such compensation from Payee or WPA, (B) fifty percent (50%) of such dividends form Payee, or (C) one hundred percent (100%) of the proceeds from any such sale or disposition of Stock. Borrower herby authorizes Payee to offset the portion of any dividends or compensation required to be prepaid hereunder against the Note, and authorizes WPA to pay directly to Payee the portion of any compensation required to be prepaid hereunder for Payee's application against the Note.

Borrower may from time to time prepay all or any portion of the principal of this Note without premium or penalty. Unless otherwise agreed to in writing, or otherwise required by applicable law, payments shall be applied first to unpaid accrued interest, then to principal, and any remaining amount to any unpaid collection costs; provided, however, upon delinquency or other Event of Default, Payee reserves the right to apply payments among principal, interest and collection costs, at his discretion. All prepayments shall be applied to the indebtedness owing hereunder in such order and manner as Payee may from time to time determine in his sole discretion. All payments and prepayments of principal of or interest on this Note shall be made in lawful money of the United States of America, at the address of Payee indicated above, or such other place as the holder of this Note shall designate in writing to Borrower. If any payment of principal of or interest on this Note shall become due on a day which is not a Business Day (as hereinafter defined), such payment shall be made on the next succeeding Business Day and any such extension of time shall be included in computing interest in connection with such payment. As used herein, the term "Business Day" shall mean any day other than a Saturday, Sunday or any other day on which national banking associations are authorized to be closed.

Payment of this Note is secured by the terms of a Pledge Agreement dated the date hereof (the "Pledge Agreement") between Borrower and Payee.

Borrower agrees that upon the occurrence of any one or more of the following events of default ("Event of Default"):

(a)     failure of Borrower to pay any installment of principal of or interest on this Note or on any other

**SECURED PROMISSORY NOTE – Page 1**



EXHIBIT NO. 1
Witness: *Jain*
Date: 2/26/18 KR

indebtedness of Borrower to Payee when due;

     (b)    any default or event of default under the Pledge Agreement; or

     (c)    the bankruptcy or insolvency of, the assignment for the benefit of creditors by, or the appointment of a receiver for any of the property of, or the liquidation, termination, dissolution or death or legal incapacity of, Borrower;

the holder of this Note may, at its option, without further notice or demand, (i) declare the outstanding principal balance of and accrued but unpaid interest on this Note at once due and payable, (ii) foreclose all liens and security interests securing payment hereof, (iii) pursue any and all other rights, remedies and recourses available to the holder hereof, at law or in equity, or (iv) pursue any combination of the foregoing (collectively, the "Available Remedies.

     The failure to exercise the option to accelerate the maturity of this Note or any other right, remedy or recourse available to the holder hereof upon the occurrence of an Event of Default hereunder shall not constitute a waiver of the right of the holder of this Note to exercise the same at that time or at any subsequent time with respect to such Event of Default or any other Event of Default. The rights, remedies and recourses of the holder hereof, as provided in this Note, shall be cumulative and concurrent and may be pursued separately, successively or together as often as occasion therefore shall arise, at the sole discretion of the holder hereof.

     Notwithstanding anything herein to the contrary, if at any time the interest rate set forth above, together with all fees, charges and other amounts which are treated as interest on the indebtedness evidenced by this Note under applicable law (collectively the "Charges"), shall exceed the maximum lawful rate (the "Maximum Rate") which may be contracted for, charged, taken, received or reserved by Payee in accordance with applicable law, the rate of interest payable hereunder in respect of such indebtedness, together with all Charges payable in respect thereof, shall be limited to the Maximum Rate.

     If this Note is placed in the hands of an attorney for collection, or is collected in whole or in part by suit or through probate, bankruptcy or other legal proceedings of any kind, Borrower agrees to pay, in addition to all other sums payable hereunder, all costs and expenses of collection, including but not limited to reasonable attorneys' fees.

     Borrower and any and all endorsers and guarantors of this Note severally waive presentment for payment, notice of nonpayment, protest, demand, notice of protest, notice of intent to accelerate, notice of acceleration and dishonor, diligence in enforcement and indulgences of every kind and without further notice hereby agree to renewals, extensions, exchanges or releases of collateral, taking of additional collateral, indulgences or partial payments, either before or after maturity.

     **THIS NOTE HAS BEEN EXECUTED UNDER, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS.**

BORROWER:

_____

Vik Jain

SECURED PROMISSORY NOTE - Page 2

PRIVILEGED/CONFIDENTIAL
FOR SETTLEMENT PURPOSES ONLY

## AGREEMENT

Wingspan Portfolio Holdings, Inc., a Delaware corporation (the "Company"), and Vik Jain ("Jain") have entered into this Agreement (this "Agreement") as of October 31, 2014 (the "Contract Date"). The parties agree as follows:

1.      Termination of Employment. Effective as of the Contract Date, Jain hereby resigns from all positions, appointments or offices Jain holds as officer, director, employee, partner, member, administrator, trustee and/or agent of the Company or any of its subsidiaries or affiliates, as well as from all administrative, fiduciary or other positions he may hold with respect to arrangements or plans for, of or relating to the Company, and from any directorship, office and/or position of any other corporation, partnership or joint venture, trust or other enterprise in which Jain is serving at the request of the Company. The Company, on behalf of itself and each entity referred to in this Section 1, accepts such resignation.

2.      Payments; Employment Agreement and Other Separation Terms. (a) On or before October 17, 2014 (the "Payment Date"), the Company will pay Jain a cash lump sum equal to Jain's earned and unpaid salary through the Contract Date, subject to applicable withholding requirements. In addition, the Company will reimburse Jain for any unreimbursed business expenses incurred prior to the Contract Date and listed on Schedule 1 hereto in accordance with the Company's policies with respect to the reimbursement of expenses. Any accrued but unused paid time off shall be payable in 80-hour increments in accordance with the Company's normal payroll cycles (the date of the last PTO payment being the "Last PTO Payment Date"). Except as specifically set for in this Section 2, Jain is not and, as a result of his termination of employment will not be, entitled to any compensation, including, without limitation, any bonus or other performance compensation.

(b)      Jain will retain and continue to own 1,778 shares of Class B Common Stock and 300 shares of Class E Common Stock (in each case, following the reclassification of shares to occur upon the filing of the Sixth Amended and Restated Certificate of Incorporation of the Company (the "Amended Certificate")), which shares shall be held subject to the terms of the Company's Third Amended and Restated Stockholders Agreement ("Stockholders Agreement"). Jain acknowledges that he has reviewed the Amended Certificate and Stockholders Agreement and agrees to execute the Stockholders Consent and Stockholders Agreement in the form previously provided to Jain to approve the Amended Certificate and Stockholders Agreement. Jain acknowledges and agrees that he will continue to be bound by all terms of the Stockholders Agreement.

(c)      Jain represents and warrants to the Company that he is not a party to any agreements with the Company or its direct or indirect subsidiaries other than the Stockholders Agreement and the Employment, Confidentiality and Non-Compete Agreement with the Company, dated as of January 1, 2014 (the "Employment Agreement"). Jain and the Company agree that the Employment Agreement is hereby terminated by mutual consent of the parties effective as of the Contract Date; provided that (i) during period ending on the earlier of (x) the first anniversary hereof or (y) the date the Company elects to cease making any Advisory Payments to Jain other than as a result of Jain's breach of the terms of this Agreement, Jain shall not, directly or on behalf of any other person or entity (A) cause, solicit, induce or encourage any employee who is employed or retained by the Company or its affiliates as an employee as of the Contract Date to leave or terminate their relationship(s) Wingspan or any of its affiliates, or (B) cause, induce or encourage any current or prospective client of the Company or its affiliates listed on Schedule 2 or any of their respective affiliates ("Restricted Clients") to terminate or



WINGSPAN 0007
App. 003

modify any current relationship or currently identified prospects with a Restricted Client, or (C) otherwise interfere with or adversely affect any current relationship or currently identified prospects of the Company or its affiliates with a Restricted Client; and (ii) following the date hereof, Jain shall maintain the confidentiality of all Confidential Information (as defined in the Employment Agreement) and not use, disclose or reveal any such Confidential Information for the benefit of any other person or entity in any manner that could reasonably be expected to or does harm the business interests of the Company or its affiliates.

(d)      JainJain agrees that he will not disparage or encourage or induce others to disparage the Company or any of its employees, officers, directors or affiliates or any Restricted Client.  For the purpose of this Agreement, "disparage" includes, without limitation, comments or statements to any person or entity, including without limitation, to the press and/or media or any entity with whom the Company or its affiliates has or has had a business relationship which would adversely affect in any manner (i) the conduct of the business of any of the Company or its affiliates (including, but not limited to, any business plans or prospects) or (ii) the reputation of the Company or its affiliates.  In addition, Jain shall not communicate with any Restricted Clients, media sources, industry representatives or others regarding the Company or its employees, officers, directors or affiliates or Jain's separation from the Company, other than acknowledging that Jain's separation from the Company was on mutually agreeable terms.

(e)      Jain shall surrender all stock options to acquire shares of Company common stock and such options shall be cancelled without consideration.

(f)      The Company will pay Jain the Advisory Payments during the Cooperation Period as further set forth in Section 3 below.  In addition, the Company may propose an additional compensation arrangement with Jain for business opportunities that he may develop for the Company or its affiliates on terms to be mutually agreed between the Company and Jain.

3.      Senior Advisor; Cooperation.  For a period commencing on the Contract Date and ending no later than the date that is one year from the Last PTO Payment Date (such period, the "Cooperation Period"), Jain will serve as an Advisor to the Company at the request of, and subject to the express authorization by, the Board of Directors of the Company (the "Board") or, after a new Chief Executive Officer of the Company ("CEO") is appointed, the CEO (either such person, an "Approving Person").  The Cooperation Period may be terminated by the Company (a) at any time following the Last PTO Payment Date upon ninety (90) days' written notice to Jain  or (b) or immediately upon Jain's breach of any provision of this Agreement.  Commencing on the PTO Payment Date, the Company shall pay to Jain $15,000 per month (prorated for any partial months) in arrears (the "Advisory Payments").  During the Cooperation Period, Jain's responsibilities will be limited to reasonable cooperation and support of the efforts of the Company in connection with its transition of management changes and client responsibilities and focus, as well as regulatory transition matters, as may be reasonably requested by an Approving Person and consistent with the terms of such request.  If and when the Company appoints a new CEO, Jain will also reasonably cooperate and support the efforts of the new CEO's transition process, to the extent reasonably requested by the new CEO.  All such cooperation and support by Jain will be in good faith and he will faithfully adhere to any communications or transition plan developed by the Board or an Approving Person.  Notwithstanding the foregoing, Jain will not be required hereunder to take any action that Jain determines in good faith materially conflicts with his effort to obtain new employment or, if applicable, any such new employment.  Jain will be reimbursed for reasonable out-of-pocket expenses approved in advance by an Approving Person in accordance with the Company's normal expense reimbursement policy.  Jain's service in the capacities contemplated by this Section 3 will be as an independent contractor, and Jain

2

will not be entitled to compensation or benefits therefor other than as set forth in this Section 3 and Section 5 hereof.

4.   <u>Release of Claims</u>.  In consideration of the covenants herein, Jain, on his own behalf and on behalf of his heirs, personal representatives, successors and assigns (collectively, the "<u>Executive Releasors</u>"), hereby forever releases, waives and discharges the Company and its subsidiaries and affiliates, and each of their past, present and future officers, directors, shareholders, members, employees, trustees, agents, representatives, affiliates, successors and assigns (collectively, the "<u>Company Releasees</u>") from any and all claims which Jain now has, has had, or may hereafter have against any of the Company Releasees resulting from, relating to or arising out of (x) Jain's employment or status as a creditor, officer, director or stockholder of the Company or its affiliates, (y) the Employment Agreement, or (z) for wrongful termination or discrimination, except (A) any claim to the extent based on any breach by the Company of any provision of this Agreement; (B) any claim arising out of, or relating to (I) any rights of indemnification, exculpation, advancement of expenses or other rights of a similar nature, in each case, under the bylaws or other governance documents of the Company, or (II) any indemnification agreement, or any other similar agreement, applicable law or coverage under the directors and officers liability and general insurance policies of the Company, in each case, arising out of or relating to Jain's position as an officer or director of any of the Company or its affiliates; (C) any claim arising under the Stockholders Agreement; or (D) any claim by Jain in his capacity as a stockholder of the Company attributable to events that occur after the date of this Agreement.  The Company, for itself and for its wholly owned subsidiaries, hereby forever releases, waives and discharges the Executive Releasors from any and all claims which the Company or any of its wholly owned subsidiaries now have, have had, or may hereafter have against the Executive Releasors resulting from, relating to or arising out of the Jain's services as a director, officer or employee of the Company or its affiliates or the Employment Agreement, except any claim to the extent based on (A) any breach by Jain of any provision of this Agreement; (B) any obligations under the Stockholders Agreement or (C) any obligation of Jain arising under the Promissory Note dated October 25, 2012 payable to the Company in the original principal amount of $201,725.59 (approximately $150,000 of which principal amount remains outstanding as of the date hereof) (the "<u>Jain Note</u>") or (D) any claim arising by reason of acts or omissions of any of Jain constituting fraud, willful misconduct, misappropriation of funds, conversion or any criminal act, which acts or omissions are determined by a court of competent jurisdiction, or admitted in writing by Jain or in a plea agreement made by Jain, other than any claim based on any acts or omissions of Jain known to any of James L. Robertson, Van Pardue, Rick Kneipper or David Harris as of the date hereof.

5.   <u>Benefits and COBRA</u>.  Except as otherwise provided in this Section 5, effective as of the Contract Date, Jain will cease all Company health benefit coverage and other welfare benefit coverage. Jain acknowledges that the Company has advised Jain that pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), Jain has a right to elect continued coverage under the Company's group health plan as permitted under applicable law.  If Jain elects such continued coverage, the Company will reimburse him for the cost of such coverage during the Cooperation Period

6.   <u>Return of Personal Property</u>.  Jain will promptly return to the Company all items of Company property in Jain's possession, including, without limitation, any items containing Confidential Information (as defined in the Employment Agreement), no later than October 10, 2014, provided, however that any mobile phone or laptop computer shall be returned to Jain for his personal use if requested by Jain after it is returned to the Company and all Company programs and data removed; provided that the return of any such items to Jain shall be conditioned upon the Company's released from any obligation to pay for cellular, internet or data service thereon.

WINGSPAN  0009
App.  005

7.     <u>Notices</u>.  All notices, demands, consents or communications required or permitted hereunder must be in writing.  Any notice, demand or other communication given under this Agreement will be deemed to be given if given in writing (including email or similar transmission) addressed as provided below (or at such other address as the addressee will have specified by notice actually received by the sender) and if either (a) actually delivered in fully legible form to such address or (b) the next business day after dispatch by electronic transmission, or nationally recognized overnight delivery service, receipt confirmed, to the following addresses, as applicable (or such other address as a party may specify by notice given hereunder as to itself):

> To the Company:
>
> 18451 North Dallas Parkway
> Dallas, TX 75287
> Attn :David Harris
> Email: dharris@assetsinorder.com
>
>
> To Jain:
>
> Vik Jain
> 5021 Southern Hills Drive
> Frisco, TX 75034
> Email: vikjain@aol.com.

8.     <u>Governing Law</u>.  This Agreement will be governed by and construed and enforced according to the laws of the State of Texas, without regard to conflict of laws principles thereof.  The parties agree that the state and federal courts located in Dallas, Texas will have exclusive jurisdiction in any action, suit or proceeding based on or arising out of this Agreement and the parties hereby: (a) submit to the personal jurisdiction of such courts; (b) consent to service of process in connection with any action, suit or proceeding; (c) agree that venue is proper and convenient in such forum; and (d) waive any other requirement (whether imposed by statute, rule of court or otherwise) with respect to personal jurisdiction, subject matter jurisdiction, venue, or service of process.

9.     <u>No Admission of Wrongdoing</u>.  The parties agree that neither this Agreement nor the furnishing of the consideration set forth herein will be deemed or construed at any time for any purpose as an admission by any party of any liability, wrongdoing or unlawful conduct of any kind, or any obligation by the Company to make any payments in the absence of this Agreement.  This Agreement is a settlement of existing rights and obligations and, as such, if it is not signed by both parties, the existence and terms hereof are confidential and subject to the privilege in Rule 408 of the Federal Rules of Evidence.

10.     <u>Amendment; Waiver</u>.  This Agreement may not be modified, altered or changed except upon express written consent of both of the parties.  The failure of any party to insist upon the performance of any of the terms and conditions in this Agreement, or the failure to prosecute any breach of any of the terms and conditions of this Agreement, will not be construed thereafter as a waiver of any such terms or conditions.  This entire Agreement will remain in full force and effect as if no such forbearance or failure of performance had occurred.

11.     <u>Entire Agreement</u>. This Agreement sets forth the entire agreement between the parties hereto and fully supersedes any oral or written prior agreements or understandings between the parties

WINGSPAN  0010
App. 006

concerning the specific subject matter of this Agreement, except for the Surviving Covenants of the Employment Agreement and the Stockholders Agreement. Each party acknowledges that it has not relied on any representations, promises, or agreements of any kind made to it in connection with the other party's decision to enter into this Agreement, except for those set forth in this Agreement.

12.   Severability.  The parties agree that if any provision of this Agreement is declared or determined by any court of competent jurisdiction to be illegal, invalid, or unenforceable, the legality, validity, and enforceability of the remaining parts, terms, or provisions will not be affected thereby, and said illegal, unenforceable or invalid part, term, or provision will be deemed not to be part of this Agreement.

13.   Withholding for Taxes.  Notwithstanding any other provisions hereof, the Company may withhold from any amounts payable hereunder all federal, state, city or other taxes as will be required to be withheld pursuant to any applicable law or government regulation or ruling.

14.   Binding Effect; Assignment.  This Agreement will inure to the benefit of and be binding upon the heirs, executors, administrators, successors and permitted assigns of the parties, including, without limitation, any successor to the Company.  The parties represent and warrant that they have not transferred or assigned to any person or entity any rights or obligations herein.  This Agreement is not assignable or delegatable by either party without the prior written consent of the other, except that the Company may assign this Agreement to any assignee of or successor to substantially all of the business or assets of the Company or any direct or indirect subsidiary thereof without prior written consent of Jain.

15.   Counterparts.  This Agreement may be executed in counterparts, and each counterpart will have the same force and effect as an original and will constitute an effective, binding agreement on the part of each of the undersigned.

16.   Captions; Drafter Protection.  This Agreement's headings and captions are provided for reference and convenience only, and will not be employed in the construction of this Agreement.  It is agreed and understood that the general rule pertaining to construction of contracts, which provides that ambiguities are to be construed against the drafter, will not apply to this Agreement.

17.   Consultation with Attorney; Voluntary Agreement.  Jain acknowledges that (a) the Company has advised Jain of his right to consult with an attorney of Jain's own choosing prior to executing this Agreement, and Jain has so consulted an attorney, (b) Jain has carefully read and fully understands all of the provisions of this Agreement, (c) Jain is entering into this Agreement, including, without limitation, the releases set forth in Section 5, knowingly, freely and voluntarily in exchange for good and valuable consideration and (d) Jain would be entitled to some but not all of the benefits described in Section 2 in the absence of this Agreement.

*[signature page follows]*

5

WINGSPAN  0011
App.  007

IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the Contract Date.

WINGSPAN PORTFOLIO HOLDINGS, INC.

By: _____

Name: _William l. River_____

Title: _General Counsel_____


_____

VIK JAIN

6

WINGSPAN  0012
App.  008

## Schedule 1

### List of Outstanding Unreimbursed Expenses

7

WINGSPAN  0013

## Schedule 2

### List of Restricted Clients

Bayview
BB&T - Branch Banking & Trust
BBVA Compass
Fannie Mae
Fay Servicing, LLC
Genesis Acquisition Management Inc
HomeStar Property Solutions
HSBC
Impac Funding Corporation
JPMorgan Chase Bank, N.A.
Nationstar
Radian
Stearns Lending, Inc.
Wells Fargo
Citibank
Quicken Loans
Woodforest Bank
Citi Mortgage
Suntrust Mortgage, Inc.
BOK Financial
Ally Bank
Cenlar FSB
Caliber Home Loans
PIMCO
US Bank
Union Bank
Rushmore
Freedom Mortgage
SLS Specialized Loan
Capital One
PHH Mortgage
Greentree Servicing


Bank of America
Bank United
Freddie Mac
URSUS Holdings, LLC

8



# Singer & Levick
## ATTORNEYS AND COUNSELORS

Todd Hoodenpyle
ATTORNEY AT LAW

June 9, 2017

<u>**Via CM/RRR No. 7178 8764 9260 0005 2374
and First-Class Mail**</u>

Vikash Jain
5021 Southern Hills Drive
Frisco, Texas 750345



EXHIBIT NO. 7
Witness: Jain
Date: 2/26/18   KR

> Re:   *In re Wingspan Portfolio Advisors, LLC*
> Bankr. Case No. 15-41255-BTR
> *In re Wingspan Portfolio Holdings, Inc.*
> Bankr. Case No. 15-41669-BTR
> U. S. Bankruptcy Court, Eastern District of Texas, Sherman Division

Dear Mr. Jain:

This law firm has been retained as counsel by Michelle Chow ("Trustee"), the duly appointed Chapter 7 Trustee of Wingspan Portfolio Advisors, LLC ("WPA") and Wingspan Portfolio Holdings, Inc. ("WPH") for the above-referenced bankruptcy Debtors. On July 13, 2015, WPA filed a Voluntary Petition under Chapter 7. On December 2, 2015, an Agreed Order for Relief under Chapter 7 was entered against WPH. WPH and WPA may be collectively referred to as "Wingspan" or "Debtors."

Section 542 of the UNITED STATES BANKRUPTCY CODE empowers Ms. Chow as the Chapter 7 Trustee to collect all sums due and owing to the Debtor. Pursuant to the records we have obtained, on October 25, 2015, you signed a Secured Promissory Note (the "Note") in the original principal sum of $201,725.59. The Note matured upon your termination on October 21, 2014. According to the records of the Debtor, you are presently indebted to and holding funds of the Debtor pursuant to the Note.

According to the records of the Debtor, the principal balance due is $159,918.61, and the accrued interest through October 21, 2014 was $5,602.53. The debt continues to accrue interest at the rate of 10% per annum from October 22, 2014 until paid in full.

Therefore, demand is hereby made upon you to make payment of One Hundred Fifty-Nine Thousand Nine Hundred Eighteen and 61/100ths Dollars ($159,918.61) in principal, plus accrued interest, and attorney's fees in the sum of $300.00 to Michelle H. Chow, Trustee, in care of Michelle E. Shriro, Singer & Levick, P.C., 16200 Addison Road, Suite 140, Addison, Texas 75001, within thirty (30) days from receipt of this letter. The interest and attorney's fees continue

Mr. Vikash Jain
June 9, 2017
Page 2

to accrue.  If the total balance is not paid in full within thirty (30) days, the Trustee will explore all options available to her under applicable law including, but not limited to, a lawsuit to recover the amounts owed, contractual or statutory interest, attorney's fees and other costs.

Please be advised that this demand is not intended to and does not constitute a waiver of any other rights or remedies which the Trustee may have.  No failure to exercise and no delay in exercising on the part of the Trustee shall operate as a waiver of any rights which she and/or the Bankruptcy Estate of the Debtor may have pursuant to applicable law.  Further, any reference by the undersigned on behalf of the Trustee shall in no way constitute or be construed to be a waiver of any other default or matter which may now exist or hereafter arise.

If you wish to discuss any of the foregoing, please do not hesitate to contact the undersigned, Todd A. Hoodenpyle, at 972.380.5533.  The original of this letter is being sent to you by certified mail, return receipt requested, in order to ensure its receipt by you.  A copy is also being sent to you by first class mail so that there is no delay in your response.  Your prompt attention to this matter is suggested.

Yours very truly,

SINGER & LEVICK, P.C.

By: _____
Todd A. Hoodenpyle

cc:     Michelle Chow, Chapter 7 Trustee



US POSTAGE $06.56
First-Class
Mailed From 75001
06/09/2017
032A0061850879

CERTIFIED MAIL

PS Form 3800, 6/2002

7178 8764 9260 0005 2374

Singer & Levick
ATTORNEYS AND COUNSELORS
16200 Addison Road | Suite 140
Addison, Texas 75001

Vikash Jain
5021 Southern Hills Drive
Frisco, Texas 75034

0007/12/17

RETURN TO SENDER
UNCLAIMED
UNABLE TO FORWARD

BC: 75001537740    *1134-06239-17-24

NIXIE    750   DE 1

FEED ➡

* U.S.A./Canada Mailer System™
* Patent 45,573,271, 5,697,648, 5,448,509
* 5,887,904, 5,951,921, 6,045,328
* 5,565,362, 6,003,921, 6,050,403
* ©/USA 5/05 CMF-088 • © 1995-99

3. Service Type

CERTIFIED

4. Restricted Delivery?
(Extra Fee) ☐ Yes

2. Article Number

7178 8764 9260 0005 2374

7178 8764 9260 0005 2374

1. Article Addressed To:

VIKASH JAIN
5021 SOUTHERN HILLS DRIVE
FRISCO, TEXAS 750345

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: (☐ Addressee or ☐ Agent)

X

B. Received By: (Please Print Clearly)

C. Date of Delivery

D. Addressee's Address (If Different From Address Used by Sender)

Secondary Address / Suite / Apt. / Floor (Please Print Clearly)

Delivery Address

City                    State            ZIP + 4 Code

Sender:

TODD HOODENPYLE
SINGER AND LEVICK, P.C.
16200 ADDISON ROAD, SUITE 140
ADDISON, TEXAS 75001

7178 8764 9260 000 2374

CERTIFIED MAIL

REORDER CAT. NO. 3086

# WRITTEN CONSENT
## OF THE BOARD OF DIRECTORS
## OF
## WINGSPAN PORTFOLIO HOLDINGS, INC.

### October 25, 2012

The undersigned, being all of the duly appointed and qualified members of the Board of Directors (the *"Board"*) of **WINGSPAN PORTFOLIO HOLDINGS, INC.**, a Delaware corporation (the *"Company"*), acting pursuant to Section 141(f) of the Delaware General Corporation Law (the *"DGCL"*), do hereby (i) waive any and all requirements for calling, giving notice of, and holding a special meeting of the Board, (ii) consent to and confirm the taking of the following actions by the Company, such written consent to be (a) evidence of the actions taken by the Board as of the date hereof; (b) filed with the minutes of the meetings of the Board; and (c) in lieu of a special meeting of the Board, and (iii) adopt and consent to the actions contemplated by the following resolutions, effective as of the date first written above:

*1.*    *Approval of 2012 Equity Incentive Compensation Plan*

> **WHEREAS**, the Board of Directors (the *"Board"*) deems it to be in the best interest of the Company and its members to adopt the 2012 Equity Incentive Compensation Plan in the form attached hereto as <u>Exhibit A</u> (the *"Plan"*) to use investment interests in the Company to attract, retain and motivate Eligible Employees and Non-Employee Directors (each as defined in the Plan) of the Company, to encourage and reward such persons' contributions to the performance of the Company and to align such interests with the members of the Company; and

> **WHEREAS**, the Plan provides for the issuance of up to 888,889 shares of Class A Common Stock, $0.001 par value per share, of the Company (*"Class A Stock"*) and 177,778 shares of Class B-1 common stock, $0.001 par value per share (*"Class B-1 Stock"*); and

> **WHEREAS**, the Board has reviewed and considered the proposed forms of a Non-Qualified Stock Option Agreement, an Incentive Stock Option Agreement and a Restricted Stock Award Agreement, respectively, and desires to approve such forms for use in connection with the granting of options and restricted stock awards under the Plan, as appropriate.

EXHIBIT NO. 10
Witness: Jain
Date: 2/26/18 KR

**BE IT RESOLVED**, that the Plan be, and it hereby is, approved, adopted and ratified in all respects; and further

**RESOLVED**, that officers of the Company be, and each hereby is, directed to cause the Plan to be submitted to the members of the Company for their approval as soon as practicable, but in any event within one (1) year from the date of this consent; and further

**RESOLVED**, that pursuant to the Plan, the Company is hereby authorized to issue up to 888,889 shares of Class A Stock and 177,778 shares of Class B-1 Stock, as such number of shares is adjusted from time to time pursuant to the provisions of the Plan, to one (1) or more eligible persons (as identified in the Plan); and further

**RESOLVED**, that an aggregate of 888,889 shares of Class A Stock and 177,778 shares of Class B-1 Stock be, and they hereby are reserved for issuance under the Plan; and further

**RESOLVED**, that, the form of a Non-Qualified Stock Option Agreement, an Incentive Stock Option Agreement and a Restricted Stock Award Agreement (collectively, the "***Grant Agreements***"), substantially in the form of the respective drafts presented to and considered by the Board be, and such forms hereby are, approved, ratified and confirmed in all respects; and further

**RESOLVED**, that the officers of the Company be, and each hereby is, authorized, empowered and directed, in the name and on behalf of the Company, to execute and deliver the appropriate form of Grant Agreement with respect to grants of options or awards approved by the Board, in the form of such document approved by this Board with such changes therein, including the incorporation of the terms governing each respective grant as shall be directed by the Board in connection with the authorization of such grant, as such officer may, in his or her sole and absolute discretion, deem appropriate or desirable, the due authorization thereof to be conclusively evidenced by such officer's execution and delivery thereof; and further

**RESOLVED**, that the officers of the Company be, and each hereby is, authorized, empowered and directed to execute, acknowledge, deliver and file any and all instruments, documents and agreements necessary or appropriate in connection with the foregoing resolutions, and to carry out and perform any acts required of them under the Plan, all upon such terms and conditions as any such officer of the Company shall determine; and further

**RESOLVED**, that any and all transactions by an officer of the Company prior to the adoption of the foregoing resolutions in connection with any of the foregoing matters, including, but not limited to, determination of the terms of the Plan and the instruments, documents, certificates, and agreements to be executed, delivered and performed in connection therewith, shall be, and they are hereby, ratified, confirmed and approved in all respects.

2

**2.**     *Determination of Fair Market Value of Class A Stock and Class B-1 Stock*

  **WHEREAS**, the Board, having received, reviewed and discussed such factors and considerations deemed relevant by the Board, including the growth stage of the Company, desires to make a determination as to the current fair market value per share of Common Stock, as set forth in the valuation analyses attached hereto as <u>Exhibit B</u> (the "*Valuation*").

  **BE IT RESOLVED**, that, based upon the Valuation and such other factors and considerations deemed relevant by the Board, the Board hereby determines that the current fair market value of each share is $4.29 per share of Class A Stock and Class B-1 Stock.

**3.**     *Approval of Restricted Stock and Option Grants*

  **WHEREAS**, the Board acts as the Committee under the Plan until the formation of a committee to administer such responsibilities; and

  **WHEREAS**, the Board desires to grant restricted stock and non-qualified stock options to certain employees of the Company to reward them for their contributions to the success of the Company and to incentivize such employees to remain as employees of the Company; and

  **WHEREAS**, the Board acknowledges that two (2) of the proposed recipients of grants under the Plan (Messrs. Jain and Hernandez) are directors of the Company and that the interests of Messrs. Jain and Hernandez in the proposed grants under the Plan have been fully disclosed to the Board.

  **BE IT RESOLVED**, the person listed in <u>Schedule A</u> hereto be, and hereby is, granted 177,778 shares of Class B-1 Stock as "Restricted Stock" under the Plan, with the vesting schedule set forth in <u>Schedule A</u>, and upon such other terms as shall be contained in a Restricted Stock Award Agreement, the form of which has been approved by the Board, to be executed and delivered by the Company and such person;

  **RESOLVED**, that the persons listed in <u>Schedule B</u> hereto be, and each hereby is, granted non-qualified stock options ("Options") to purchase shares of the Company's Class A Stock in the number, at the exercise price (subject to adjustment as provided in the Plan), with the vesting schedule and with the expiration date reflected in <u>Schedule B</u>, and upon such other the terms as shall be contained in a Non-Qualified Stock Option Agreement, the form of which has been approved by the Board, to be executed and delivered by the Company and such respective person:

  **RESOLVED**, that the Restricted Stock and each Option granted above is granted subject to and contingent upon (i) the approval of the Plan by the stockholders of the Company within the 12-month period commencing on the date hereof and (ii) the execution and delivery by such respective person of a

DAL:825757.3

Restricted Stock Award Agreement or Non-Qualified Stock Option Agreement, as applicable, in the form of such agreement approved by the Board of Directors; and further

**RESOLVED**, that such respective Non-Qualified Stock Option Agreements shall provide that the number of options such respective person has been granted, the exercise price (which the Board has determined to be $4.29 per share), the vesting schedule and expiration date shall be as reflected in <u>Schedule B</u> hereto; and further

**RESOLVED**, that the officers of the Company be, and each hereby is, authorized, empowered and directed, in the name and on behalf of the Company to execute and deliver a Restricted Stock Award Agreement with respect to the Restricted Stock, and a Non-Qualified Stock Option Agreement with respect to each Option granted herein, containing the specific terms outlined herein and such other additional terms and conditions as the officer executing such respective Stock Option Agreement shall deem necessary or proper; and further

**RESOLVED**, that the shares of Class B-1 Stock issued as Restricted Stock shall be fully paid and non-assessable, duly authorized, and outstanding and issued stock of the Company upon the grant of such shares; and further.

\**RESOLVED**, that any shares of Class A Stock issued upon exercise of the Options granted above, in accordance with the terms and conditions of the applicable Non-Qualified Stock Option Agreement, shall be fully paid and nonassessable, duly authorized, outstanding and issued stock of the Company upon receipt by the Company of a properly executed and completed notice of exercise and the exercise price for such shares of the Company's Class A Stock as shall be required to be paid in accordance with the terms and conditions of the applicable Non-Qualified Stock Option Agreement and any amendments thereto; and further

**RESOLVED**, that the proper officers of the Company be, and each hereby is, authorized, empowered and directed, at any time, for and on behalf of the Company to do and perform any and all other acts and things and to enter into, execute and deliver any and all attestations, certifications, documents or instruments, of whatever kind or nature, in order to issue any and all shares of the Company's Class A Stock that may be sold and issued upon exercise of such Options granted herein to the above listed persons.

*4.    Additional Actions*

**RESOLVED,** that the appropriate officers of the Company be, and each of them hereby is, authorized and directed, for and on behalf of the Company, to make such filings and applications, to execute and deliver such documents and instruments, and to do such acts and things as such officer deems necessary or advisable in order to implement the foregoing resolutions; and further

**RESOLVED**, that the officers of the Company be, and they hereby are, authorized and directed to take such further actions and execute such documents as may be necessary in order to implement the foregoing resolutions.

5.      *General Authorizing Resolution*

**RESOLVED**, that the officers of the Company be, and each of them hereby are, authorized and directed, for and on behalf of the Company, to take such further action and execute such additional documents as each may deem necessary or appropriate to carry out the purposes of the above resolutions.

DAL:825757.3

**IN WITNESS WHEREOF**, the undersigned has executed this Written Consent of the Board of Directors of **WINGSPAN PORTFOLIO HOLDINGS, INC.** as of this 25th day of October 2012.

_____
Steven Horne, Director

_____
Vik Jain, Director

_____
Cesar Hernandez, Director

_____
James Robertson

_____
Van Pardue

DAL:825757.3

App. 020

## **EXHIBIT A**

## **2012 EQUITY INCENTIVE PLAN**

[attached]

DAL:825757.3

## EXHIBIT B

## SHARE VALUATION METHODOLOGY

The value of the shares of the Company's Class A Stock and Class B-1 Stock is equal to the offering price for the shares of Company's Class B-1 Stock pursuant to the Class B-1 Common Stock Purchase Agreement dated September 21, 2012. The offering price per share was $4.29 per share of Class B-1 Stock. This value was set by arms-length negotiation between the new investors in the Company and the Company, and Board does not believe that any events have occurred since the date of that offering to justify any change in the valuation of the shares of Company's common stock.

# SCHEDULE A

## RESTRICTED STOCK GRANT

| Date of Grant | Grantee | No. of Shares of Class B-1 Stock | Vesting Dates |
|---|---|---|---|
| 10/25/2012 | Vik Jain | 59,260 | 12/31/2012 |
| | | 59,259 | 12/31/2013 |
| | | 59,259 | 12/31/2014 |
| | **TOTAL** | 177,778 | |

## SCHEDULE B

## NON-QUALIFIED OPTION GRANTS

| Date of Grant | Optionee | No. of Options | Vesting Dates | Exercise Price | Expiration Date |
|---|---|---|---|---|---|
| 10/25/2012 | Vik Jain | 444,444 | 12/31/2012 (148,148)<br>12/31/2013 (148,148)<br>12/31/2014 (148,148) | $4.29 | 10/25/2022 |
| 10/25/2012 | Matt Cassell | 88,889 | 12/31/2012 (29,630)<br>12/31/2013 (29,630)<br>12/31/2014 (29,629) | $4.29 | 10/25/2022 |
| 10/25/2012 | Ed Delgado | 53,333 | 12/31/2012 (17,778)<br>12/31/2013 (17,778)<br>12/31/2014 (17,777) | $4.29 | 10/25/2022 |
| 10/25/2012 | Cesar Hernandez | 44,444 | 12/31/2012 (14,815)<br>12/31/2013 (14,815)<br>12/31/2014 (14,814) | $4.29 | 10/25/2022 |
| 10/25/2012 | E.J. Kite | 2,667 | 12/31/2012 (889)<br>12/31/2013 (889)<br>12/31/2014 (889) | $4.29 | 10/25/2022 |
| 10/25/2012 | Catherine Castle | 2,667 | 12/31/2012 (889)<br>12/31/2013 (889)<br>12/31/2014 (889) | $4.29 | 10/25/2022 |
| 10/25/2012 | Chris Plummer | 2,667 | 12/31/2012 (889)<br>12/31/2013 (889)<br>12/31/2014 (889) | $4.29 | 10/25/2022 |
| 10/25/2012 | Robert Shiller | 2,667 | 12/31/2012 (889)<br>12/31/2013 (889)<br>12/31/2014 (889) | $4.29 | 10/25/2022 |
| 10/25/2012 | Steven Shiller | 2,667 | 12/31/2012 (889)<br>12/31/2013 (889)<br>12/31/2014 (889) | $4.29 | 10/25/2022 |
| 10/25/2012 | Jason Dickard | 2,667 | 12/31/2012 (889)<br>12/31/2013 (889)<br>12/31/2014 (889) | $4.29 | 10/25/2022 |
| | **Total** | 647,112 | | | |

DAL:825757.3

App. 024

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

```
In re:                      ) (
                            ) (
WINGSPAN PORTFOLIO          ) (   Case No. 15-41669
HOLDINGS, INC.,             ) (
                            ) (   (Chapter 7)
     Debtor.                ) (
_____) (_____
                            ) (
MICHELLE H. CHOW, TRUSTEE,) (
                            ) (
     Plaintiff,             ) (
                            ) (
v.                          ) (   ADV. NO. 17-04100
                            ) (
VIKASH JAIN,                ) (
                            ) (
     Defendant.             ) (
```

- - - - - - - -

ORAL DEPOSITION

OF VIKASH JAIN

FEBRUARY 26, 2018

- - - - - - - -

Lockwood & Associates Court Reporters, LLC
(214) 705-0141

**Exhibit 20**

Page 7

```
 1   withholding any documents.  Are you withholding any
 2   documents that you know of --
 3                   MR. BARNWELL:  No.
 4                   MR. HOODENPYLE:  -- right now?
 5                   MR. BARNWELL:  No.
 6                   MR. HOODENPYLE:  Okay.  Thank you.
 7                           VIKASH JAIN,
 8   having been first duly sworn, testified as follows:
 9                           EXAMINATION
10   BY MR. HOODENPYLE:
11                   (Exhibits No. 1, 2, and 3 marked.)
12       Q.  Would you state your full name for the record.
13       A.  Sure.  Vikash Jain.
14       Q.  Mr. Jain, what is your current residential
15   address?
16       A.  5021 Southern Hills Drive, Frisco, Texas 75034.
17       Q.  How long have you lived at that address?
18       A.  Since 1989.
19       Q.  And who lives there with you?
20       A.  My wife.
21       Q.  What is your wife's name?
22       A.  Linda.
23       Q.  Mr. Jain, have you ever given a deposition
24   before?
25       A.  Sure.
```

1    directors is to oversee the operations of the company

2    and set policy.

3         Q.  What email address do you use?

4         A.  I primarily use vikjain@aol.com.

5         Q.  Are there any other email addresses that you

6    use?

7         A.  I use -- for Preventive Care, I use

8    vik.jain@aclfin.com.

9         Q.  How long have you used the vikjain@aol.com

10   email address?

11        A.  I think I was the first one on AOL.

12        Q.  It's a long time?

13        A.  A long time.

14        Q.  20 years plus?

15        A.  At least.

16        Q.  What email addresses did you use while you

17   worked at Wingspan?

18        A.  It was a Wingspan -- they gave me an email

19   address for Wingspan.

20        Q.  Do you recall what the address --

21        A.  No, sir.

22        Q.  -- email address was?

23        A.  No, sir.

24        Q.  Did you use it?

25        A.  Yes, for Wingspan business, yes.

Page 19

1     Q.   And you're also familiar with Wingspan

2   Portfolio Advisors, LLC?

3     A.   Yes, sir.

4     Q.   Do you understand that both of those companies

5   have filed for bankruptcy or are in bankruptcy?

6     A.   Yes.

7     Q.   Okay.   You understand Michelle Chow is the

8   trustee of the bankruptcy estate for both Wingspan

9   Portfolio Holdings and Wingspan Portfolio Advisors?

10    A.   Yes.

11    Q.   You understand that, as the trustee who kind of

12   stepped into the shoes of these two debtors, at least

13   for Wingspan Portfolio Holdings, that she is the owner

14   or holder of this promissory note now?

15    A.   Yes.

16    Q.   What did Wingspan Portfolio Holdings do?

17    A.   It was a holding company that downstreamed

18   investments into Advisors and other operating entities.

19    Q.   And what did Wingspan Portfolio Advisors do?

20    A.   They were primarily involved with working with

21   major banks on default loans.

22    Q.   Mortgage loans?

23    A.   Default mortgage loans.

24    Q.   What relationship did you have to WPH, Wingspan

25   Portfolio Holdings?

Page 20

1        A.   I was on the board.

2        Q.   Any other relationship with WPH?

3        A.   No.

4        Q.   Okay.  When did you first go onto the board for

5   WPH?

6        A.   From what I recollect, it was 2013.

7        Q.   And how long did you serve on the board for

8   WPH?

9        A.   Until I was let go in September or October of

10   2014.

11        Q.   Let go from the board?

12        A.   Board and the company.

13        Q.   What was your relationship with WPA, Wingspan

14   Portfolio Advisors?

15        A.   My primary responsibilities were described as

16   business development and strategic mergers and

17   acquisitions.

18        Q.   And how long did you have this role with WPA?

19        A.   Mid 2012 through my departure.

20        Q.   In October of 2014?

21        A.   Uh-huh.

22        Q.   Yes?

23        A.   Yes.

24        Q.   I think the title that you had was executive

25   vice president of strategic alliances.  Is that right?

Page 21

1          A.   That's correct.

2          Q.   In 2012, you received a loan from WPH for

3     approximately $200,000; is that right?

4          A.   If you're referring to the promissory note,

5     yes.

6          Q.   Yes, I'm referring to the promissory note.

7               I'm handing you what's marked as Exhibit

8     No. 1.  Is this a true and correct copy of the secured

9     promissory note?

10         A.   Yes.

11         Q.   If you turn to the second page, is that your

12    signature?

13         A.   Yes, sir.

14         Q.   You signed this note on or about October 25,

15    2012?

16         A.   Yes, sir.

17         Q.   And this note was in the original principal

18    amount of $201,725.59; is that correct?

19         A.   Correct.

20         Q.   What led to you signing this note?

21         A.   The board had granted stock options to key

22    employees, and so I was granted stock options, and those

23    stock options were to be exercised on 12/31/12,

24    12/31/13, and 12/31/14 for 59,260 shares, 59,259 shares,

25    and 59,259 shares.  And so the company -- and those were

Page 22

1    the vesting dates I just gave you, the vesting dates.

2    And so the company paid the taxes due, based on the

3    value of the options in October of '12, and --

4        Q.  And so the note was for you to repay the

5    company for paying the taxes on the options?

6        A.  That is correct.  And to further elaborate on

7    that -- and I did not really recognize this until

8    yesterday -- is that you only pay taxes once you're

9    vested.  So the company took it upon themselves to pay

10   those taxes without my consent, obviously.  They told me

11   that it was done.  And that's what this note was about,

12   and I did not catch that at that time until yesterday.

13           MR. HOODENPYLE:  Object to everything in

14   that portion as nonresponsive to my question, as to what

15   the purpose of the note was.

16       Q.  This Exhibit No. 1, the note, you signed this

17   voluntarily, correct?

18       A.  Of course.

19       Q.  All right.  And you knew at that time that you

20   were paying the company back for taxes that the company

21   had paid for the options, correct?

22       A.  That is correct.

23       Q.  Okay.

24       A.  But the point I was making, Counselor, was that

25   the company should not have paid the taxes for all the

Page 23

1    options at that time.  I did not catch that till

2    yesterday.

3              MR. HOODENPYLE:  I'm going to object as

4    nonresponsive.

5         Q.  Just so we can go through this note and

6    understand the terms of it, if you'd look under -- in

7    this first paragraph, there's a definition of a maturity

8    date, and this note would mature on or before the

9    earlier of either December 31, 2015 --

10        A.  Uh-huh.

11        Q.  -- or the occurrence of a triggering event, and

12   the document describes a triggering event.  You

13   understand that?

14        A.  Where are you looking?

15        Q.  It's in the first paragraph.

16        A.  Yeah, I saw that.  But you said triggering

17   event.

18        Q.  Yes.  All right.  We're just --

19        A.  So the term triggering --

20        Q.  I'm just looking at the first line.

21        A.  I got you.

22        Q.  Okay?  The maturity date is defined.

23        A.  Uh-huh.

24        Q.  Do you see that?

25        A.  Yes, sir.

Page 24

1      Q.   And it's the earlier of December 31st of

2  2015 --

3      A.   Uh-huh.

4      Q.   -- or the occurrence of a triggering event.  Do

5  you see that?

6      A.   Yes, sir.

7      Q.   And then later it describes a triggering event,

8  one of which is an event where you are no longer

9  employed by WPA or its affiliates, correct?

10      A.   Uh-huh.

11      Q.   Correct?

12      A.   Yes, sir.

13      Q.   And that actually occurred before December 31,

14  2015, when you were no longer employed by WPA or its

15  affiliates, correct?

16      A.   That is correct.

17      Q.   So on October 21, 2014, your employment and

18  your affiliation with WPA and its affiliates terminated,

19  correct?

20      A.   That is correct.

21      Q.   So that October 21, 2014, was the triggering

22  event, correct?

23      A.   Correct.

24      Q.   All right.  So October 21, 2014, was also the

25  maturity date for this note, agreed?

Page 25

1     A.  Correct.

2     Q.  Okay.  And if we stay in this first paragraph,

3  while you were performing under this note, the note

4  carried interest at a rate of 2 percent.  Do you

5  understand that?

6     A.  Yes, sir.

7     Q.  And then later it says if you were in default

8  under the note, if it's not paid when due, then interest

9  would bear on this note at 10 percent per annum.  Do you

10  see that?

11     A.  That's -- yes, sir.

12     Q.  Okay.  And then if you go down after the first

13  paragraph, it says the principle of and all accrued but

14  unpaid interest on this note shall be due and payable as

15  follows.  And under A there, it says that this is

16  basically an interest bearing note until it's due,

17  correct?

18     A.  Correct.

19     Q.  And the first interest payment was due on

20  January 1st of 2013, agreed?

21     A.  Yes.

22     Q.  And then you would have had to have paid

23  interest on January 1st of 2014, correct?

24     A.  Yes.

25     Q.  Okay.  Did you make any payments under this

Page 26

1    note?

2         A.   Yes.

3         Q.   How many?

4         A.   I don't recollect.

5         Q.   Do you have any documents that show you made

6    any payments?

7         A.   No, I don't.   Only the accounting that you

8    provided to me in your documents.

9         Q.   So other than what we may have produced to you,

10   you don't have any documents --

11        A.   No.

12        Q.   -- showing any other payments; is that correct?

13        A.   Correct.

14        Q.   And you didn't make any other payments under

15   this note, other than what we may have produced; is that

16   correct?

17        A.   That is correct.

18        Q.   Okay.   And just to be clear, I think one of the

19   documents we produced showed a credit on December 31st

20   of 2012 in the amount of $4,971.67.   Do you know how

21   that number came about?

22        A.   I have no recollection.

23        Q.   And then there was also -- that same document

24   showed a credit on January 31, 2013, of $37,000 -- or

25   $37,500.   Do you know how that number came about?

Page 27

1      A.   That was supposed to be my bonus payment that
2   was directly applied to the note.
3      Q.   Okay.  So your bonus for what?
4      A.   2012.
5      Q.   Okay.  And the company just offset that bonus
6   payment?
7      A.   That is correct.
8      Q.   Okay.  But the 4,971.67, you don't know where
9   that came from?
10      A.   I do not remember that.
11      Q.   Okay.  Those are the only credits that you
12   would be entitled to based on payments, correct?
13      A.   Correct.
14      Q.   Okay.  So based on the note, you would agree
15   with me that by January 2nd of 2014, you failed to pay
16   interest on the January 1, 2014, date; you were in
17   default under the note on January 2, 2014?
18      A.   Yes.
19      Q.   Okay.  And under the note, you were required to
20   pay all principle and accrued interest by October 21,
21   2014?
22      A.   Yes.
23      Q.   I handed you what I marked as Exhibit No. 2.
24   Is this a true and correct copy of the pledge agreement
25   that you signed in conjunction with the note?

Page 30

1   it should not have been issued, I should not have signed

2   it because I was not vested in all the stock and all the

3   options.

4           MR. HOODENPYLE:  Okay.  I'm going to

5   object as nonresponsive.

6       Q.  And I'll ask you again, so we have a clear

7   record, Mr. Jain.  But you understood because of your

8   termination on October 21, 2014, that your employment

9   and affiliation with WPA and WPH terminated, the note

10  was due and payable in full, and you did not pay it in

11  full on that date; is that correct?

12      A.  Correct.

13      Q.  On October 21, 2014, you signed an agreement

14  with Wingspan Holdings, Inc.; is that correct?

15      A.  Correct.

16      Q.  And I've handed you Exhibit No. 3.  Is this a

17  true and correct copy of that October 21, 2014,

18  agreement?

19      A.  Yes.

20      Q.  If you would turn to page 6, which has

21  WINGSPAN 12 in the bottom right-hand corner.  If you'd

22  turn to that page, is that your signature above where it

23  says Vik Jain?

24      A.  Yes.

25      Q.  And then above that, this was signed by William

Page 45

```
1        Q.  And are there other amounts you believe you
2   were entitled to under this agreement?
3        A.  No, sir.
4        Q.  In section 4 of Exhibit 3, do you see that
5   section?
6        A.  Yes.
7        Q.  It's entitled Release of Claims.
8        A.  Yes.
9        Q.  And if you go a little bit more than halfway
10  down, it starts with "the company."
11       A.  Yeah.  Yes.
12       Q.  And it describes what matters the company is
13  releasing you from.  Do you understand that?
14       A.  Yes.
15       Q.  Okay.  And when you read this document and
16  signed it back on October 21, 2014, did you take note of
17  the exceptions to the release language?
18       A.  Yes.
19       Q.  And one of the exceptions from this release
20  language was your promissory note, Exhibit No. 1; isn't
21  that correct?
22       A.  Yes.
23       Q.  Yes?
24       A.  Yes.
25       Q.  You understood that when you signed this
```

Page 65

1      Q.   So it's your belief that Wingspan did

2    something, some act that was unfair to you?

3      A.   Very much so.

4      Q.   What was that?

5      A.   They paid two hundred some-odd thousand

6    dollars, when they should have paid a third of that.

7      Q.   In your answer, you have asserted a defense

8    that the trustee's claims are barred by the equitable

9    document of estoppel or quasi-estoppel.   And what does

10   that mean to you?

11     A.   I would defer that question to my lawyers.

12     Q.   In your answer, you assert a defense that the

13   trustee's claims are barred by ratification.   What does

14   that mean to you?

15     A.   By ratification means simply that the fact that

16   the payments were not made to me, I had to assume that

17   they were being offset against the note.

18     Q.   Your advisory payments?

19     A.   That is correct, sir.

20     Q.   Anything else that you mean by that?

21     A.   No, sir.

22     Q.   In your answer, you assert a defense that

23   plaintiff's claims are barred by waiver.   What does that

24   mean to you?

25     A.   By waiver means the fact that the payments,

1      A.  No, sir.

2      Q.  If you would turn to Request For Production

3  No. 24.

4      A.  24.

5      Q.  We've asked you to produce any documents that

6  shows that your indebtedness was discharged.  Do you

7  have any other documents that you haven't produced?

8      A.  No, sir.

9      Q.  And Request For Production No. 26 there at the

10  bottom, we've asked for any documents showing you

11  performed services on behalf of the debtor after October

12  21, 2014, through the date the debtor filed its

13  bankruptcy petition.  Do you have any other documents

14  you haven't produced?

15      A.  I have given you what I have this morning.

16      Q.  Do you have any other documents?

17      A.  No, sir.

18          (Exhibit No. 7 marked.)

19      Q.  Mr. Jain, I've handed you what is marked as

20  Exhibit No. 7.  Have you seen this document before?

21      A.  Yes, sir.

22      Q.  And this is our demand letter that we sent to

23  you; is that right?

24      A.  Yes, sir.

25      Q.  And you received a copy of this on or about

Page 74

1   June 9, 2017?

2       A.   On June 20th.

3       Q.   Okay.  Well, the document you're looking at, we

4   sent this to you by certified mail, and you didn't claim

5   it.  Why didn't you claim this letter?

6       A.   I was out of town.  I don't know.

7       Q.   Okay.  But we also sent one to you by first

8   class mail, and you received that copy, correct?

9       A.   I've seen this letter.

10      Q.   Okay.

11      A.   So I don't know which one.

12      Q.   All right.  And in response, that's when you

13  hired Mr. Barnwell; is that correct?

14      A.   That is correct.

15      Q.   You didn't make any payments on the note after

16  you received our demand letter, did you?

17      A.   No, sir.

18                (Exhibit No. 8 marked.)

19      Q.   Mr. Jain, I've handed you what I've marked as

20  Exhibit No. 8.  These are Wingspan Portfolio Holdings,

21  Inc., board minutes for the meeting on October 22, 2014.

22  Have you seen this document before?

23      A.   No.

24      Q.   Did you attend --

25      A.   Until this morning, when you gave me a copy.

Page 81

1     A.   No.

2     Q.   Is that correct?

3     A.   That is correct.

4     Q.   Okay.

5          (Exhibit No. 10 marked.)

6     Q.   I've handed you what's marked as Exhibit No.

7     10.   What is this document?

8     A.   This is the consent of the board of directors

9     for the stock options for all -- multiple employees.

10    Q.   All right.   And this is a document you produced

11    today.   Why did you produce this document?

12    A.   Because of the vesting period is clearly stated

13    on page -- it's not marked -- Schedule A.

14    Q.   You're the only employee that is listed on the

15    restricted stock grant, is that correct, on Schedule A?

16    A.   Yes, sir.

17    Q.   Why were you the only one listed on that page?

18    A.   There was a difference between restricted stock

19    grants and nonqualified option grants.

20    Q.   What was the difference?

21    A.   I do not know.

22    Q.   And this is for Class B-1 stock?

23    A.   I do not --

24    Q.   Looking at schedule 1, it says "number of

25    shares of Class B-1 stock."   Do you see that?

```
 1              IN THE UNITED STATES BANKRUPTCY COURT
                 FOR THE EASTERN DISTRICT OF TEXAS
 2                         SHERMAN DIVISION

 3   In re:                  ) (
                             ) (
 4   WINGSPAN PORTFOLIO       ) (   Case No. 15-41669
     HOLDINGS, INC.,          ) (
 5                           ) (   (Chapter 7)
          Debtor.            ) (
 6   _____) (_____
                             ) (
 7   MICHELLE H. CHOW, TRUSTEE,) (
                             ) (
 8        Plaintiff,          ) (
                             ) (
 9   v.                      ) (   ADV. NO. 17-04100
                             ) (
10   VIKASH JAIN,             ) (
                             ) (
11        Defendant.          ) (

12
                    REPORTER'S CERTIFICATION
13                 DEPOSITION OF VIKASH JAIN
                     FEBRUARY 26, 2018
14

15        I,  KEARBY RIVES, Certified Shorthand Reporter in

16   and for the State of Texas, hereby certify to the

17   following:

18        That the witness, VIKASH JAIN, was duly sworn by

19   the officer and that the transcript of the oral

20   deposition is a true record of the testimony given by

21   the witness;

22        I further certify that pursuant to FRCP Rule 30(e)

23   that the signature of the deponent:

24        _X_ was requested by the deponent or a party before

25   the completion of the deposition, and that signature is
```

Page 96

1  to be before any notary public and returned within 30

2  days from date of receipt of the transcript;

3      ___ was not requested by the deponent or a party

4  before the completion of the deposition.

5      That the amount of time used by each party at the

6  deposition is as follows:

7      MR. TODD A. HOODENPYLE - 1 hour, 43 minutes;

8      MR. CORY BARNWELL - 3 minutes;

9      That $_____ is the deposition officer's

10  charges to the Plaintiff and Trustee for preparing the

11  original deposition transcript and any copies of

12  exhibits.

13      I further certify that I am neither counsel for,

14  related to, nor employed by any of the parties or

15  attorneys in the action in which this proceeding was

16  taken, and further that I am not financially or

17  otherwise interested in the outcome of the action.

18      Certified to by me this 12th day of March,

19

20      _____
       KEARBY RIVES, Texas CSR 7203

21     Date of Expiration:  12/31/19
       Lockwood & Associates

22     Firm No. 425
       5729 Lebanon Road

23     Suite 144-430
       Frisco, Texas 75034

24     Telephone  (214) 705-0141
       Fax   (214) 705-0501

25

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **WINGSPAN PORTFOLIO** | § | **Case No. 15-41669** |
| **HOLDINGS, INC.,** | § | |
| | § | **(Chapter 7)** |
| Debtor. | § | |
| | § | |
| **MICHELLE H. CHOW, TRUSTEE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **ADV. NO. 17-04100** |
| | § | |
| **VIKASH JAIN,** | § | |
| | § | |
| Defendant. | § | |

## DECLARATION OF TODD HOODENPYLE ON ATTORNEYS' FEES AND COSTS

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned Notary Public, on this day personally appeared Todd Hoodenpyle, who, being known to me and who by me first duly sworn on oath deposed and said:

1. My name is Todd Hoodenpyle. I have personal knowledge of the facts stated below that I have acquired through my representation of Michelle H. Chow, Trustee for the bankruptcy estate of Wingspan Portfolio Holdings, Inc. in this case. I have never been convicted of a felony and I am fully competent to make this declaration. All of the statements herein are true and correct.

2. I am the attorney of record for Michelle H. Chow, Trustee for the bankruptcy estate of Wingspan Portfolio Holdings, Inc. I have been licensed by the State Bar of Texas since 1997. I graduated from the Texas Tech University School of Law in December 1996. I am also admitted to practice in the Northern, Southern and Eastern Districts for the United States District Courts, and the Fifth Circuit.

**Exhibit 21**

App. 045

3.  I am a partner with the law firm of Singer & Levick, P.C., whose offices are located at 16200 Addison Road, Suite 140, Addison, Texas 75001.  I am familiar with the fees customarily charged by other attorneys with similar years of experience in this locality for similar services.  I know what is reasonable and what is customary as well as the factors to take into consideration in setting a legal fee in this district.  I have testified in court as to attorney's fees in the Dallas/Fort Worth area.  The hourly rates that I have charged for myself and my staff are customary and reasonable in this district.  The hourly rates for the lawyers and legal assistants working on this matter are as follows:

| | | |
|---|---|---|
| Todd Hoodenpyle | Partner | $300.00 |
| Michelle Shriro | Partner | $400.00 |
| Suzanne Cotton | Paralegal | $165.00 |

The time expended and costs incurred reflected on Exhibit 20, in my opinion, were reasonable and necessary.

4.  It is my practice, and the practice of my law firm, to prepare and keep detailed billing records for each client and client matter.  I keep contemporaneous records and notes of billings on each matter, and my fellow attorneys and staff in my firm do so as well.  The recorded time is entered into our software program for maintaining the billable time on each matter, and then billed to the client.  I reviewed the billing statements on this matter prior to my testimony set forth herein.  Since we were retained in this case, our firm has expended 53.5 hours of billable time through April 5, 2018 related to the claims against Defendant Vikash Jain.  Among other things, we considered issues related to collection of the amount owed under the Note signed by Vikash Jain, researched legal issues, prepared a demand letter, drafted and filed pleadings, conducted investigations, obtained and reviewed documents.  Additionally, we had conferences with representatives of the Debtor, our client, and attorney in this matter for Defendant.  The time expended on this case was reasonable and necessary.  The breakdown on the time that the lawyers and paralegals of Singer & Levick, P.C. have expended on this case, all of which in my opinion was reasonable and necessary, is as follows:

| Timekeeper | Title | Hours | Rate | Total |
|---|---|---|---|---|
| Todd Hoodenpyle | Partner | 55.9 | $300.00 | $16,770.00 |
| Michelle Shriro | Partner | 2.5 | $400.00 | $1,000.00 |
| Suzanne Cotton | Paralegal | 2.6 | $165.00 | $429.50 |
| Total hours | | | | $18,199.50 |

In April 2018, through the date of filing Plaintiff's summary-judgment motion, I have incurred an additional 12.5 hours including, but not limited to, drafting the summary-judgment motion, drafting the Affidavit of Michelle Chow, drafting this affidavit and compiling exhibits, for an additional sum of $3,750.00.  Further, I anticipate that the Trustee will incur additional attorney's fees for my time preparing a reply to a response from Jain to the summary-judgment motion and preparation for hearing on the motion of

**DECLARATION OF TODD HOODENPYLE ON ATTORNEYS' FEES AND COSTS – PAGE 2**

approximately 10 hours at my hourly rate of $300.00. Accordingly, Plaintiff is entitled to an additional fee of $3,000.00. Accordingly, Plaintiff is entitled an award of attorney's fees in the sum of **$24,949.50** through summary judgment.

5. <u>Novelty and difficulty of the questions involved</u>. This case involves the collection of a promissory note, and Defendant's arguments that there was an accord and satisfaction or novation. The issues are not novel or difficult, save and except Jain's argument that there was an accord and satisfaction or a novation when he did not produce any such agreements to support such an argument.

6. <u>Skill requisite to perform legal services properly</u>. The Court may take judicial notice of the skill of the Trustee's counsel taking into consideration the work product, the preparation and ability of counsel demonstrated by the Trustee's counsel before the Court during the course of this case.

7. <u>Preclusions of other employment by the lawyer due to acceptance of this case</u>. Our firm was not necessarily precluded from other employment as a result of this matter.

8. <u>Fees customarily charged in the locality for similar services</u>. I am familiar with the fees customarily charged by other attorneys with similar years of experience in this locality for similar services. I have testified in court as to attorney's fees in the Dallas/Fort Worth area. The hourly rates that I have charged for myself and my staff are customary and reasonable in this district.

9. <u>Whether the fee is fixed or contingent.</u> While our time is kept on this matter on an hourly basis, if the bankruptcy estate does not recover any funds, there will be no funds to pay attorney's fees for our work on this matter.

10. <u>The time limitations imposed by the client or circumstances.</u> Other than the deadlines established by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure and the Court's Scheduling Order, Plaintiff had no additional time limitations.

11. <u>The amount involved and the results obtained</u>. The amount involved is readily identifiable from the summary-judgment motion. The Trustee seeks to recover approximately $159,000, plus interest and attorney's fees. The Trustee made demand for payment on Defendant Vikash Jain before filing suit. Defendant failed and refused to pay the amounts owed. In the event the Court grants Plaintiff's summary judgment motion, the results obtained in this case will be excellent considering Defendant's refusal to pay.

12. <u>Experience, reputation and ability of the lawyer</u>. I represent various clients from individuals, trustees, small and large companies, including plaintiff and defense work in business litigation and collections cases. I do not advertise in the media and rely upon referrals from others who have faith in my ability.

13. <u>The undesirability of the case</u>. This case is not one that is particularly desirable from the standpoint of a Trustee who must recover a judgment in order for any amounts to be paid

**DECLARATION OF TODD HOODENPYLE ON ATTORNEYS' FEES AND COSTS – PAGE 3**

through the bankruptcy estate. Defendant Vikash Jain has aggressively defended this case. Taking this case on a "contingent hourly" basis made this an undesirable because our firm incurred numerous hours not knowing whether the estate would recover funds to be paid through the administration of the bankruptcy case.

14. <u>The nature and length of relationship with the client</u>. This firm has represented Ms. Chow for more than 10 years.

15. The out-of-pocket expenses and costs expended and charged, so far, to Plaintiff in this case are as follows:

| | |
|---|---|
| Deposition of Vikash Jain: | $566.00 |
| Total | $566.00 |

The out-of-pocket expenses and costs are not included in hourly rates.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 24, 2018.

FURTHER AFFIANT SAITH NOT.

_____
Todd Hoodenpyle

**DECLARATION OF TODD HOODENPYLE ON ATTORNEYS' FEES AND COSTS – PAGE 4**

Michelle Chow, Trustee

December 31, 2017
Client No: 087-03B
Invoice No:  717881

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio
Advisors, LLC, Debtor

Hours

06/09/2017 TH
       Prepare Demand Letter to Vikash Jain regarding Note [1.0];

**Exhibit 22**

Michelle Chow, Trustee

December 31, 2017
Client No: 087-03B
Invoice No:  717881

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio
Advisors, LLC, Debtor

Hours

07/03/2017 TH                                    Review letter from Cory

Michelle Chow, Trustee

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio
Advisors, LLC, Debtor

                                                                    Hours

     Barnwell regarding Jain Note [.1]; Electronic correspondence
     to Cory Barnwell regarding Jain Note [.1].

Michelle Chow, Trustee                                December 31, 2017
                                                   Client No: 087-03B
                                                   Invoice No:  717881

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio
Advisors, LLC, Debtor

                                                              Hours

07/11/2017 TH
                                                         Review
          letter from Cory Barnwell regarding Note [.1]; Electronic
          correspondence to Cory Barnwell regarding Jain Note [.1].

Michelle Chow, Trustee

December 31, 2017
Client No: 087-03B
Invoice No:  717881

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio
Advisors, LLC, Debtor

Hours

10/11/2017

TH    Finalize Complaint against Vikash Jain [.4];

Michelle Chow, Trustee

December 31, 2017
Client No: 087-03B
Invoice No:  717881

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio
Advisors, LLC, Debtor


Hours


| Date | | Description | Hours | Amount |
|---|---|---|---|---|
| 11/09/2017 | TH | Review Motion Appear Pro Hac Vice for Vik Jain [.1]; Review Answer filed by Vik Jain [.1]. | 0.20 | 72.00 |
| 11/13/2017 | TH | Prepare Request for Production to Vik Jain [1.0]; Electronic correspondence Cory Barnwell regarding conference [.1]; Review Notice and order regarding initial pre-trial procedures [.2]; Prepare Initial Disclosures in Jain case [.5]. | 1.80 | 648.00 |

Michelle Chow, Trustee                                    December 31, 2017
                                                          Client No: 087-03B
                                                          Invoice No:  717881

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio
Advisors, LLC, Debtor


                                                                    Hours


        SFC


                        Attention to docketing all deadlines
            contained in Notice [.1].


11/14/2017 TH   Electronic correspondence with Cory Barnwell regarding Rule
                26 Conference regarding Jain Adversary [.1];


11/21/2017 TH   Prepare for Rule 26 Conference [.2]; Telephone call to Cory
                Barnwell regarding Rule 26 Conference [.3]; Review Jain
                Separation Agreement [.3].                          0.80    288.00

Michelle Chow, Trustee

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio
Advisors, LLC, Debtor

Hours

| | | | |
|---|---|---|---|
| 11/30/2017 TH | Revise disclosures [.5]; Review electronic correspondence and documents regarding Vik Jain [2.3]; Compile documents for production [1.5]. | 4.30 | 1,548.00 |

12/01/2017 TH   Telephone call to Michelle Chow regarding settlement issues

Michelle Chow, Trustee

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio
Advisors, LLC, Debtor

|  | Hours |  |
|---|---|---|
| with Chase and Vik Jain [.2]; Review electronic correspondence regarding Vik Jain [.5]. | 0.70 | 252.00 |

| 12/04/2017 TH   Revise Disclosures in Jain Adversary. | 0.20 | 72.00 |

12/06/2017

TH    Electronic correspondence to Michelle Chow regarding potential
settlement with Vik Jain [.2]; Review Vik Jain's disclosures
and documents produced [.3];

Michelle Chow, Trustee
December 31, 2017
Client No: 087-03B
Invoice No:  717881

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio
Advisors, LLC, Debtor

Hours

12/08/2017 TH    Consider agreement provided by Jain and Release Agreement with
                 merger clause.                                                 0.10      36.00


12/11/2017 TH    Telephone call to Cory Barnwell regarding settlement.          0.20      72.00

Michelle Chow, Trustee

December 31, 2017
Client No: 087-03B
Invoice No:  717881

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio
Advisors, LLC, Debtor

Hours

12/20/2017

    TH   Review letter from Cory Barnwell regarding settlement with Vik
Jain.    0.10    36.00

12/21/2017

    TH   Electronic correspondence Cory Barnwell regarding settlement
with Vik Jain.    0.20    72.00

SINGER & LEVICK, P.C.
Attorneys and Counselors
16200 Addison Road, Suite 140
Addison, Texas  75001
Telephone (972) 380-5533
Facsimile (972) 380-5748

Tax ID 75-2446449

Page: 1
April 19, 2018
Client No: 087-03B
Invoice No:  718784

Michelle Chow, Trustee
6318 E. Lovers Lane
Dallas  TX  75214

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio               Draft statement
Advisors, LLC, Debtor

Please return top portion with remittance
include invoice number on check

### Legal Fees

|            |    |                                                                                 | Hours |       |
|------------|----|---------------------------------------------------------------------------------|-------|-------|
| 01/02/2018 | TH | Electronic correspondence with Cory Barnwell regarding settlement with Vik Jain. | 0.10  | 30.00 |

Michelle Chow, Trustee                                              April 19, 2018
                                                                Client No: 087-03B
                                                               Invoice No:  718784

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio
Advisors, LLC, Debtor


                                                                         Hours

01/09/2018 TH   Electronic correspondence Cory Barnwell regarding settlement
                [.1];

Michelle Chow, Trustee

April 19, 2018
Client No: 087-03B
Invoice No:  718784

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio
Advisors, LLC, Debtor

Hours

| | | | | |
|---|---|---|---|---|
| 01/15/2018 TH | Review Jain's Request for Production, Request for Admissions and Interrogatories to Trustee [.2]; Review electronic correspondence from Cory Barnwell regarding settlement [.1]. | | 0.30 | 90.00 |
| 01/16/2018 TH | Review Defendant's Motion for Jury Trial and consider issues regarding same [.6]; Electronic correspondence with Cory Barnwell regarding same [.1]. | | 0.70 | 210.00 |
| 01/17/2018 TH | Conference with counsel regarding management conference. | | 0.20 | 60.00 |

Michelle Chow, Trustee

April 19, 2018
Client No: 087-03B
Invoice No:  718784

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio
Advisors, LLC, Debtor

Hours

01/24/2018 TH   Review Scheduling Order in Jain case [.1]; Revise Request for
Production to Jain [.5]; Prepare Motion to Strike Jury Demand
[.9].                                                                      1.50      450.00

           TH   Electronic correspondence with Cory Barnwell regarding
depositions.                                                               0.20       60.00

01/29/2018 TH   (CHO Jain) Prepare Objection to Response to Request for
Admissions, Interrogatories and Request for Production [1.8];
Consider defenses of accord and satisfaction and novation[.5].            2.30      690.00

01/30/2018 TH   Telephone call to Terry Mitchell regarding Jain Note [.5].            0.50      150.00

01/31/2018 TH   Revise Discovery Responses [.3]; Telephone call to Stephanie
Askew regarding Vik Jain [.3]; Review electronic
correspondence regarding Jain Note [.4]; Telephone call to
John Frenzel regarding background facts on Vik Jain Note [.3].            1.30      390.00

Michelle Chow, Trustee

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio
Advisors, LLC, Debtor

|  |  | Hours |  |
|---|---|---|---|
| 02/02/2018 TH | Electronic correspondence with Cory Barnwell regarding Jain Deposition [.1]; Review General Ledgers regarding payments to Vik Jain [.3]. | 0.40 | 120.00 |
| 02/05/2018 |  |  |  |
| TH | Compile documents for deposition of Jain [.2]; Revise Motion to Strike Jury Demand [.2]; Revise Discovery Responses and forward to M. Chow [1.1]; Prepare Notice of Deposition of Vikash Jain [.2];                         Review documents regarding Vik Jain [.8]. |  |  |
| 02/08/2018 |  |  |  |
| TH | Prepare Expert Disclosures in Jain Adversary [.2]; Prepare Motion for Summary Judgment and Brief in Support [2.0]. | 2.20 | 660.00 |
| 02/13/2018 TH | Finalize  Discovery Responses to Jain. | 0.20 | 60.00 |

                                                                           Page: 6
Michelle Chow, Trustee                                              April 19, 2018
                                                                Client No: 087-03B
                                                                Invoice No:  718784

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio
Advisors, LLC, Debtor


                                                                           Hours

02/20/2018 SFC                                                 Review
              numerous boxes to locate documents requested by attorney for
              upcoming deposition (2.00);

02/21/2018 SFC  (Jain Adversary) Receipt of Court's docket text setting
              hearing on Trustee's Motion to Strike Demand for Jury Trial,
              and attention to docketing same.                        0.10      16.50

02/22/2018 SFC  (Jain Adversary) Telephone conference with S. Askew regarding
              missing green card to December 24, 2014 letter to V. Jain
              (.1); Conference with TAH regarding same (.1).          0.20      33.00

02/23/2018 TH   Prepare for Vik Jain Deposition [.5]; Review Jain's Responses
              to Request for Production [.5]; Electronic correspondence with
              Cory Barnwell [.4].                                     1.40     420.00

           SFC  (Jain Adversary) Telephone conference with S. Askew regarding
              status on locating documents pertaining to V. Jain.     0.10      16.50

02/26/2018

           TH   Prepare for and take Deposition of Vik Jain [3.5]; Consider
              Jain's argument regarding stock grant and taxes [.3].   3.80    1,140.00

           SFC  (Jain Adversary) Receipt of correspondence from S. Askew
              forwarding emails sent to V. Jain, and attention to forwarding
              same to TAH.                                            0.10      16.50

02/27/2018

Michelle Chow, Trustee                                                    April 19, 2018
                                                                     Client No: 087-03B
                                                                     Invoice No:  718784

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio
Advisors, LLC, Debtor


                                                                              Hours


|  | TH | Prepare Second Request for Production [.3]; Telephone call to M. Chow regarding settlement [.3]; Consider issues regarding Jain's Restricted Stock Grant [1.8]; Prepare for and attend hearing on Motion to Strike Jury Demand [1.9]; Telephone call to S. Askew regarding same [.2]; Telephone call to B. Rivers regarding same [.3]. | 4.80 | 1,440.00 |
|---|---|---|---|---|
| 03/01/2018 | TH | Electronic correspondence Cory Barnwell regarding Jain potential settlement [.1]; Review electronic correspondence from Cory Barnwell [.1]; Revise Second Request for Production [.1]. | 0.30 | 90.00 |
| 03/02/2018 | TH | Electronic correspondence to Cory Barnwell regarding Chow Deposition [.1]; Revise Motion for Summary Judgment against Jain [.5]. | 0.60 | 180.00 |
| 03/07/2018 | TH | Telephone call to Matt Cassell regarding Vik Jain Note. | 0.20 | 60.00 |
| 03/08/2018 | TH | Consider core issue regarding claims against Vik Jain [1.5]; Prepare Brief in Support of Motion to Strike [.4]. | 1.90 | 570.00 |

03/11/2018 MES  Review of case law on core proceeding for turnover issue in

Michelle Chow, Trustee                                                                April 19, 2018
                                                                                   Client No: 087-03B
                                                                                   Invoice No:  718784

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio
Advisors, LLC, Debtor


|  |  |  | Hours |  |
|---|---|---|---|---|
|  |  | Jain adversary. | 1.50 | 600.00 |
| 03/12/2018 | TH | Prepare Request for Admissions and Interrogatories to Vik Jain. | 1.20 | 360.00 |
|  | MES | Working on case law for Jain adversary. | 1.00 | 400.00 |
| 03/13/2018 | TH | Consider issue regarding core matter and jurisdiction [1.2]; Revise Interrogatories and Request for Admissions to Jain [.3]. | 1.50 | 450.00 |
| 03/19/2018 | TH | Review electronic correspondence from Cory Barnwell [.1]; Review Deposition Notice of Michelle Chow [.1]; Electronic correspondence with Cory Barnwell regarding discovery [.4]. | 0.60 | 180.00 |
| 03/20/2018 | TH | Consider issues regarding payments to Vik Jain [.3]; Electronic correspondence Cory Barnwell regarding payments [.2]; Review pleadings and documents in preparation of call with Michelle Chow [.5]; Telephone call to Michelle Chow in preparation of deposition [1.0]; Revise Motion for Summary Judgment with citations to Jain Deposition [2.0]; Review electronic correspondence from Cory Barnwell [.1]. | 4.10 | 1,230.00 |

03/21/2018 TH


                                                              Prepare First
             Supplement to Objection and Responses to Request for
             Admissions [.1].

Michelle Chow, Trustee                                                    April 19, 2018

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio
Advisors, LLC, Debtor


                                                                                    Hours


03/26/2018 TH    Review Defendant's Supplemental Brief.                        0.20      60.00




03/27/2018 TH    Review Defendant's Motion for Leave to File amended Answer
                 [.3]; Meet with Michelle chow in preparation of Deposition
                 [.8]; Defend Michelle Chow deposition [1.0]; Prepare for and
                 attend hearing [2.5].                                         4.60   1,380.00

Michelle Chow, Trustee                                              April 19, 2018
                                                                  Client No: 087-03B
                                                                  Invoice No:  718784

Wingspan Portfolio Advisors, LLC
Case No. 15-41255; In RE Wingspan Portfolio
Advisors, LLC, Debtor


                                                                        Hours

03/29/2018 TH    Electronic correspondence with Cory Barnwell regarding Amended
                 Motion for Leave [.1]




04/02/2018 TH
                 Consider issues regarding claims against Jain and defenses
                 [.7]; Telephone call to Jim Robertson regarding background
                 facts [.4]; Prepare Robertson Declaration [.3]; Telephone call
                 to Van Pardue regarding background facts [.4]; Prepare Pardue
                 Declaration [.3]; Review Vik Jain's Response to Second Request
                 for Production [.3].                                      3.30     990.00

04/03/2018 TH    Revise Motion for Summary Judgment Brief regarding Vik Jain
                 [.7]; Telephone call to Van Pardue regarding Declaration [.4];


04/04/2018 TH    Consider issues regarding Jain defenses regarding discharge
                 [.3]; Multiple telephone calls to Van Pardue regarding
                 Declaration [.5]; Revise Pardue Declaration [.1]; Revise Jim
                 Robertson Declaration [.2].                               1.10     330.00

04/05/2018 TH    Prepare Response to Jain's Amended Motion for Leave to Amend
                 [1.5];

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **WINGSPAN PORTFOLIO** | § | **Case No. 15-41669** |
| **HOLDINGS, INC.,** | § | |
| | § | **(Chapter 7)** |
| Debtor. | § | |
| | § | |
| | § | |
| **MICHELLE H. CHOW, TRUSTEE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **ADV. NO. 17-04100** |
| | § | |
| **VIKASH JAIN,** | § | |
| | § | |
| Defendant. | § | |

## DECLARATION OF MICHELLE CHOW

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned Notary Public, on this day personally appeared Michelle Chow, who, being known to me and who by me first duly sworn on oath deposed and said:

1. My name is Michelle Chow. I have personal knowledge of the facts stated below that I have acquired through my activities as Trustee for the bankruptcy estate of Wingspan Portfolio Holdings, Inc. I have never been convicted of a felony and I am fully competent to make this declaration. All of the statements herein are true and correct.

2. I was appointed as the trustee for the bankruptcy estate of Wingspan Portfolio Holdings, Inc. ("WPH"). I was also appointed as trustee for the bankruptcy estate of Wingspan Portfolio Advisors, LLC ("WPA") in Case No. 15-41255. I have reviewed the books and records of WPH and WPA. Based upon a review of the books of WPH, Vikash Jain ("Jain") signed a Secured Promissory Note, a copy of which was included in the records of WPH is attached hereto as Exhibit 3.

**DECLARATION OF MICHELLE CHOW – PAGE 1**

## Exhibit 23

3. The books and records of WPH reflect that Jain was credited the sum of $4,971.67 on December 31, 2012, and another credit in the sum of $37,500.00 on January 31, 2013.

4. From February 1, 2013 through January 1, 2014, the Note accrued interest at the rate of 2% per annum on the outstanding balance of $159,253.92, or $8.72 per diem. The accrued interest during this time totaled to $2,921.20 (335 days multiplied by $8.72 per diem).

5. Based upon Jain's admission that he did not make the January 1, 2014 interest payment, the Note was in default as of January 2, 2014, and accrued interest at the rate of 10% per annum under the Note, or $43.63 per diem. From January 2, 2014 through October 21, 2014, the Note accrued interest in the sum of $15,704.79.

6. From January 2, 2014 through April 20, 2018, the default interest accrued at the rate of 10% per annum totals to $68,586.36 (1572 days multiplied by $43.63 per diem). The total accrued interest from February 1, 2013 through April 20, 2018 totals to $71,507.56. The Note continues to accrue interest at the rate of $43.63 after April 20, 2018 until judgment is entered.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 25, 2018.

FURTHER AFFIANT SAITH NOT.

Michelle Chow

**DECLARATION OF MICHELLE CHOW – PAGE 2**